**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOSIN BALOGUN and ALEXANDRA MASON, on behalf of themselves and all others similarly situated, | <u>**CLASS ACTION**</u><br><br><u>**DEMAND FOR JURY TRIAL**</u><br><br>Civ. No. 24-7326 |
| Plaintiffs, | |
| v. | |
| ADVANCE MAGAZINE PUBLISHERS INC. d/b/a CONDÉ NAST, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

NATURE OF THE ACTION ................................................................................................... 1

THE PARTIES ......................................................................................................................... 4

JURISDICTION AND VENUE ............................................................................................... 4

FACTUAL ALLEGATIONS ................................................................................................... 5

      I.      Condé Nast Forces Individuals to Arbitrate in AAA ............................................. 5

      II.     Condé Nast Prevents AAA from Administering Plaintiffs' Arbitrations ................ 8

CLASS ACTION ALLEGATIONS ........................................................................................ 10

COUNT I – BREACH OF CONTRACT ................................................................................ 14

COUNT II – RELIEF AND SANCTIONS UNDER CALIFORNIA S.B. 707 ...................... 15

COUNT III – N.Y. GEN. BUS. LAW § 349 ......................................................................... 17

PRAYER FOR RELIEF ......................................................................................................... 20

Plaintiffs Tosin Balogun and Alexandra Mason ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant Advance Magazine Publishers Inc. d/b/a Condé Nast ("Defendant," "Advance," or "Condé Nast"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and on their own investigation, on the investigation of their counsel, or on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to stop bad faith and deceptive conduct by Condé Nast, namely first depriving its customers of the right to a jury trial by imposing an arbitration agreement, while at the same time deliberately flouting its own obligations under the arbitration rules it chose so that consumers cannot vindicate their claims in arbitration. Condé Nast's systematic and bad faith failure to honor its *own agreements* to arbitrate is designed to put individuals in legal limbo and prevent them from proceeding with claims against Condé Nast.

2.      Defendant Condé Nast operates websites for the subscribers of various notable magazines, including *Architectural Digest, Bon Appetit, Glamour, GQ, Self, Teen Vogue, The New Yorker, Vanity Fair,* and *Vogue.* Condé Nast requires everyone who subscribes to its magazines and visits its websites to agree to its standardized arbitration clause, as part of a lengthy set of terms and conditions.

3.      Plaintiffs and members of the proposed classes are current or former subscribers to magazines and their related websites owned and operated by Condé Nast.

4.      According to Condé Nast's Terms and Conditions (the "Terms"), as effective when Plaintiffs' claims accrued and under which Plaintiffs sought to initiate their arbitrations, any disputes Plaintiffs have with Condé Nast must be brought in arbitration before the American Arbitration Association ("AAA").

5.      Plaintiffs, along with other individuals represented by undersigned counsel, followed their contractual obligations and initiated arbitration in the AAA by first sending a notice of dispute to Condé Nast pursuant to the Terms.

6.      The notice of dispute advised that Plaintiffs and others sought relief under a variety of laws depending on their state of residence and other factors, bringing claims under, *inter alia*, the Video Privacy Protection Act ("VPPA"), the California Invasion of Privacy Act ("CIPA"), the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), the Federal Wiretap Act, and New York's General Business Law ("GBL").

7.      Unbeknownst to Plaintiffs, while purporting to bind them to pursue claims in arbitration, Condé Nast was stacking the deck so that it could unilaterally avoid honoring its own agreement to arbitrate Plaintiffs' claims.

8.      In particular, Condé Nast deliberately did not register the Terms with the AAA, in clear violation of the AAA's own rules for companies that choose to use the AAA in forced arbitration clauses—rules that were chosen by Condé Nast itself to govern the arbitration agreement. This set up allowed Condé Nast to bind consumers to arbitration while retaining the option to sabotage any arbitration proceeding by refusing to comply with the AAA rules.

9.      Pursuant to Rule 12 of the AAA's Consumer Rules, when Condé Nast adopted its Terms, it should have notified the AAA of the existence of its contract that contained the arbitration clause and provided a copy of the arbitration agreement to register it on the AAA's Consumer Clause Registry.

10.      This enables the AAA to review the arbitration clause and ensure that it complies with the AAA's Consumer Due Process Protocols.

11.      Condé Nast never provided a copy of the Terms to the AAA. As a result, the Terms were never registered with AAA.

12.    Meanwhile, Plaintiffs attempted informal dispute resolution and then initiated arbitration pursuant to the Terms, expecting that Condé Nast would honor its arbitration clause.

13.    Condé Nast instead completely ignored Plaintiffs' claims and its own obligations under the arbitration clause it had imposed on them.

14.    After Plaintiffs initiated arbitration, the AAA asked Condé Nast to register its arbitration clause.

15.    However, Condé Nast also ignored the AAA's request and did not register its clause.

16.    Because Condé Nast did not register the clause (or even respond to AAA's outreach), AAA declined to administer Plaintiffs' arbitration demands.

17.    As a result, Plaintiffs and the proposed classes are unable to proceed with their arbitrations.

18.    "There is a fundamental problem with [Condé Nast]'s approach in this case: if a party can escape a mandatory arbitration provision and move a case to court simply by not paying its arbitrator . . . such arbitration provisions will lose their force. A mandatory arbitration provision would become an optional arbitration provision." *Shenzhen Xingchen Xuanyuan Indus. Co. v. Amazon.com Servs. LLC*, No. 1:23-CV-6549-GHW, 2024 WL 2836486, at *9 (S.D.N.Y. May 30, 2024).

19.    Condé Nast's conduct here is even worse because it would effectively nullify the arbitration agreement as to not one but thousands of consumers. This creates a deceptive and illusory "dispute resolution" system where Condé Nast forces consumers to engage in a farcical informal dispute resolution and arbitration process with no means to effectively vindicate their claims. While it sends consumers chasing rainbows, Condé Nast reserves to itself the option to unilaterally force any consumer to arbitrate by eventually registering its arbitration clause and paying related fees.

20.     Plaintiffs therefore bring this proposed class action for breach of contract, for relief and sanctions under Cal. Code Civ. P. § 1281.97, , New York General Business Law § 349, and seek compensatory and punitive damages, statutory damages, attorney fees, and injunctive and declaratory relief.

## THE PARTIES

21.     Plaintiff Tosin Balogun is a resident of California. Plaintiff Balogun previously had a paid subscription to Defendant's *Vogue* magazine and visited and used the magazine's website. She also watched exclusive videos on *Vogue*'s website, which were made available to her because she was a member of Vogue Club. She agreed to arbitrate her claims against Condé Nast and attempted to do so per Defendant's Terms.

22.     Plaintiff Alexandra Mason is a resident of New York. Plaintiff Mason has had a paid subscription to Defendant's *Vogue* and *Bon Appétit* magazine and used these magazines' websites. She agreed to arbitrate her claims against Condé Nast and attempted to do so per Defendant's Terms.

23.     Defendant Advance Magazine Publishers Inc. d/b/a Condé Nast is incorporated in New York and maintains its principal place of business at One World Trade Center, New York, NY 10007. Many of Condé Nast's flagship brands, including *Vogue*, *The New Yorker*, and *Glamour*, are based in New York, and Condé Nast regularly transacts business in New York. Condé Nast claims to reach over one billion consumers across "print, digital, video and social platforms," with the vast majority of its audience engaging through digital channels.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Classes exceeds 100; and many members of the proposed Classes are citizens of different states than Defendant.

25.     This Court has personal jurisdiction over Defendant Condé Nast because it is incorporated in New York, headquartered in New York, New York, regularly conducts business in this Judicial District, and has extensive contacts with this forum.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant transacts substantial business in this District.

27.     It is also proper because Defendant's Terms designate New York and state federal courts as the forum for claims that do not proceed in arbitration.

28.     This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

**I.     Condé Nast Forces Individuals to Arbitrate in AAA**

29.     Condé Nast forces each of its magazine subscribers, including Plaintiffs, to agree to its non-negotiable Terms.

30.     Specifically, its Terms, *see* Ex. A, which became effective as of April 27, 2023, and under which Plaintiffs sought relief, apply broadly to purchasers of Defendant's products, subscribers to its magazines, and individuals who use Defendant's websites:

> By purchasing a Product, registering for any aspect of the Service, or otherwise accessing, visiting or using the Service, you consent and agree to be bound by the terms of this User Agreement.

31.     "Product" means:

> any merchandise, item, product and/or service, including without limitation Content, contests and surveys, magazines and other publications that may be featured, mentioned, reviewed, described, auctioned, given away, rented, sold, distributed, or otherwise available on or through the Service, either by us or third parties.

32.     "Service" means:

each website, mobile site, application, email/text/SMS campaign, event, and/or other activity, offering, or publication (regardless of how distributed, transmitted, published, or broadcast) provided by us that links to, or references, this document, including without limitation all Content, features and functionality thereof, such as widgets, plug-ins, and embeddable players.

33.     The Terms also contain a broad arbitration clause:

**Arbitration, Waiver of Class Action Suits, and Dispute Resolution**: THIS SECTION SHOULD BE BROADLY CONSTRUED TO COVER ANY CLAIM RELATING TO ANY ASPECT OF YOUR RELATIONSHIP WITH US, INCLUDING, BUT NOT LIMITED TO, ANY CLAIM ARISING OUT OF OR RELATED TO THE AGREEMENT.

34.     The Terms define "Claim" expansively:

"Claim" means any and all claims, disputes, demands, proceedings, cause of action, judgments, damages, liabilities, losses, costs or expense (including, but not limited to reasonable attorneys' fees) of any kind and nature, known and unknown, suspected and unsuspected, disclosed and undisclosed, that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory.

35.     The Terms' arbitration clause first requires consumers to engage in informal dispute resolution when attempting to resolve a Claim:

You agree that in the event you have any Claim against us, you will first contact us and make a good faith sustained effort to resolve the Claim before resorting to more formal means of resolution, including without limitation arbitration or any court action.

36.     If the informal dispute resolution process is unsuccessful, the arbitration clause mandates formal arbitration in the AAA and forces subscribers and other users of Defendant's product to waive the right to a jury trial:

> IN THE EVENT ANY CLAIM CANNOT BE INFORMALLY RESOLVED, YOU AND WE AGREE TO ARBITRATE ALL CLAIMS ON AN INDIVIDUAL BASIS IN ACCORDANCE WITH THE TERMS OF THE ARBITRATION PROVISIONS OF THIS AGREEMENT, RATHER THAN LITIGATE THE CLAIM IN COURT. . . .
>
> ARBITRATION MEANS YOU WILL HAVE A FAIR HEARING BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY. BY ENTERING INTO THIS AGREEMENT, YOU AND WE EACH AGREE TO WAIVE THE RIGHT TO A TRIAL BY JURY FOR ALL CLAIMS.

37.     The arbitration clause also includes a class action waiver.

38.     The clause states, *inter alia*, that "[t]he arbitration will be administered by the American Arbitration Association ('AAA') in accordance with its Consumer Arbitration Rules."

39.     The clause further states that:

> Payment of all filing, administration, and arbitrator fees will be governed by the AAA's rules, except as follows: if your total Claims seek less than $10,000, we will reimburse you for filing fees you pay to the AAA.

40.     The clause also requires the application of the Federal Arbitration Act and New York law to claims brought in arbitration:

> The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. The laws of the United States, State of New York, without regard to any principles of conflict of laws, applies to any arbitration under this section.

41.     Despite designating the AAA as the arbitration provider, and specifically mandating that AAA's Consumer Arbitration Rules would apply, Condé Nast did not comply with the AAA's rule requiring that it provide a copy of its arbitration clause to the AAA as part of the registration process.

42.     Specifically, Rule 12 of the AAA's Consumer Rules states:

> [A] business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should:
>
> **1.** notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.
>
> **2**. provide the AAA a copy of the arbitration agreement.

43.     Once the AAA reviews the arbitration clause and the company pays all applicable review and registration fees, the business will be included in the AAA's Consumer Clause Registry.

## II.    Condé Nast Prevents AAA from Administering Plaintiffs' Arbitrations

44.     On April 17, 2024, undersigned counsel on behalf of Plaintiffs and other similarly situated individuals sent a notice of dispute letter to Condé Nast via USPS Certified Mail in accordance with the Terms.

45.     The letter advised that the individuals sought relief under a variety of laws depending on their state of residence and other factors, bringing claims under, *inter alia*, the Video Privacy Protection Act ("VPPA"), the California Invasion of Privacy Act ("CIPA"), the Federal Wiretap Act and New York's General Business Law ("GBL").

46.     The letter offered 30 days to engage in good faith resolution.

47.     Condé Nast did not respond to the letter.

48.    On June 17, 2024, undersigned counsel filed Plaintiffs' and other individuals' demands for arbitration with the AAA, in accordance with the Terms.

49.    On June 18, 2024, undersigned counsel mailed Condé Nast a letter notifying it of that filing and serving upon it all the AAA case initiation documents.

50.    Condé Nast did not respond to this letter.

51.     On July 9, 2024, undersigned counsel attempted to contact Condé Nast's deputy general counsel via email.

52.    Counsel also began serving individual demands to Condé Nast via USPS Certified Mail.

53.    Condé Nast still did not respond to this outreach.

54.    On July 23, 2024, the AAA sent via certified mail a letter to Condé Nast advising that "Condé Nast failed to comply with the AAA's policies regarding consumer claims" by failing to submit its Terms to the AAA "for review and inclusion on the Consumer Clause Registry." *See* Ex. B.

55.    The AAA's letter advised Condé Nast that it must submit its arbitration clause so that the AAA could review it "for material compliance with the due process standards of the Consumer Due Process Protocol ('Protocol') and the Consumer Rules."

56.    The AAA's letter further advised Condé Nast that "[i]n order for the AAA to proceed with administration, [Condé Nast] must register its clause on the Registry." The letter provided instructions for Condé Nast to do so.

57.    The letter advised that Condé Nast had until August 6, 2024, to register its clause with the AAA's Consumer Clause Registry.

58.    Condé Nast did not respond to AAA's letter. Nor did it register its arbitration clause with the AAA.

59.     On August 12, 2024, the AAA sent, via certified mail, a letter to Condé Nast reminding that its previous letter advised that "the AAA will decline to proceed if the business does not comply, and register their clause." *See* Ex. C.

60.     Because Condé Nast still had not registered its clause, the AAA stated that it was "declining to administer these arbitrations."

61.     The AAA also stated that if Condé Nast "advises the AAA in the future of its intention to comply with the AAA's Consumer Arbitration Rules and if applicable, resolves any outstanding payment obligations, the AAA may consider at its sole discretion, accepting newly filed consumer cases going forward."

62.     To this date, Condé Nast has not responded to any of the AAA's letters, nor Plaintiffs' counsel's repeated attempts to establish contact.

63.     Condé Nast still has not registered its clause with the AAA.

64.     As a result of Condé Nast's failure to comply with the AAA's rules by not registering its arbitration clause with the AAA—despite its Terms forcing individuals like Plaintiffs to arbitrate before the AAA—Plaintiffs are unable to proceed in arbitration.

65.     Accordingly, Plaintiffs bring this instant action.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this action on behalf of themselves and on behalf of the following class (the "Nationwide Class"), defined as follows:

> All persons in the United States whose arbitration with Defendant did not proceed as a result of Defendant's failure to register its arbitration clause with the AAA or otherwise comply with the AAA's rules and Defendant's own Terms, and/or such subclasses as the Court may deem appropriate.

67.    Plaintiff Tosin Balogun brings this action on behalf of themselves and on behalf of the following class (the "California Class"), defined as follows:

> All persons who are residents of California whose arbitration with Defendant did not proceed as a result of Defendant's failure to register its arbitration clause with the AAA or otherwise comply with the AAA's rules and Defendant's own Terms, and/or such subclasses as the Court may deem appropriate.

68.    Plaintiff Alexandra Mason brings this action on behalf of themselves and on behalf of the following class (the "New York Class"), defined as follows:

> All persons who are residents of New York whose arbitration with Defendant did not proceed as a result of Defendant's failure to register its arbitration clause with the AAA or otherwise comply with the AAA's rules and Defendant's own Terms, and/or such subclasses as the Court may deem appropriate.

69.    Excluded from the proposed Classes are Defendant, its parents, subsidiaries, officers, directors, and any entity in which Defendant has a controlling interest.

70.    Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

71.    The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the class members.

72.    Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

73.    Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Fed. R. Civ.

P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

74. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

75. **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes well over a thousand members.

76. **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Plaintiffs' counsel as well as by Defendant in the usual course of business and within their control or the control of Plaintiffs and the class members themselves.

77. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant breached its contract with Plaintiffs and the Classes by failing to engage in informal dispute resolution;

(b) Whether Defendant breached its contract with Plaintiffs and the Classes by refusing to provide its arbitration clause to the AAA;

(c) Whether Defendant breached its contract with Plaintiffs and the Classes by causing the AAA to decline to administer the arbitrations;

(d) Whether Plaintiff Balogun and the California Class are entitled to relief under S.B. 707;

(e)  Whether Plaintiffs and the Classes are entitled to relief under NY G.B.L. § 349;

(f)  Whether Plaintiffs and the Classes are entitled to compensatory, punitive, and statutory damages; and

(g)  Whether Plaintiffs and the Classes are entitled to attorney fees and costs.

78.  **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of the Plaintiffs and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiffs and Classes. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct and were damaged in the same way. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

79.  **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and they have retained counsel competent and experienced in complex class action, mass arbitrations, and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

80.  **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would increase the delay and expense to all parties and the court

system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

81.     **Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(2)). In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendants; or

(b)     the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## <u>COUNT I – BREACH OF CONTRACT</u>

## **(On Behalf of Plaintiffs and All Classes)**

82.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

83.     New York law applies to Defendant's agreement with Plaintiffs, per its Terms.

84.     Per the Terms, all claims require informal dispute resolution and then must be brought in arbitration.

85.     Defendant breached its contract with Plaintiffs and the Classes by failing to engage in good-faith informal dispute resolution, as required by its Terms.

86.     Defendant further breached its contract with Plaintiffs and the Classes by failing to register its clause with the AAA, as required by the AAA's Consumer Arbitration Rules.

87.     Defendant also refused to register its clause despite the AAA's specific request that Defendant do so.

88.     Defendant did not even respond to the AAA's request that it register its clause.

89.     Plaintiffs complied with their obligation under the Terms by sending a notice of dispute to Defendant and attempting to resolve their claims in good faith before filing in arbitration.

90.     Defendant never responded to Plaintiffs' notice of dispute.

91.     Plaintiffs therefore initiated arbitration before the AAA.

92.     Because of Defendant's conduct, the AAA declined to administer Plaintiffs' and the Classes' arbitrations.

93.     Defendant's bad faith sabotaging of the Terms' dispute resolution provisions also breached the duty of good faith and fair dealing inherent in every contract.

94.     Plaintiffs and the Classes have been injured by filing an arbitration that Defendant had no intention to participate in, despite the Terms, which Defendant itself wrote, that require disputes to be resolved through arbitration.

95.     Plaintiffs and the Classes have also been injured by the unreasonable delay in resolving their claims, having now been forced to file their claims in Court to seek relief.

96.     Plaintiffs and the Classes do not have an adequate remedy at law.

97.     Accordingly, Plaintiffs bring a claim for damages, and declaratory and injunctive relief.

## <u>COUNT II – RELIEF AND SANCTIONS UNDER CALIFORNIA S.B. 707</u>

### (On Behalf of Plaintiff Tosin Balogun and the California Class)

98.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

99.    Plaintiff Balogun and the California Class are entitled to specific forms of relief under California law because of Defendant's breach of an arbitration agreement. *See* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019), *codified at* Cal. Code Civ. P. § 1281.97 ("SB 707").

100.    Specifically, SB 707 § 1281.97 provides:

> (a)(1) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement is in default of the arbitration, and waives its right to compel arbitration . . .

> (b) If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may do either of the following:

>> (1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction. If the employee or consumer withdraws the claim from arbitration and proceeds with an action in a court of appropriate jurisdiction, the statute of limitations with regard to all claims brought or that relate back to any claim brought in arbitration shall be tolled as of the date of the first filing of a claim in any court, arbitration forum, or other dispute resolution forum.

>> (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

101.    Defendant is a "drafting party" because it is "the company or business that included a pre-dispute arbitration provision in a contract with a consumer.'" *Id.* § 1280(e).

102.    Defendant has materially breached the agreement to arbitrate by failing to register its arbitration clause according to the AAA's Rules, thereby preventing Plaintiffs and the California Class from arbitrating their claims against Defendant.

103.    Accordingly, Plaintiff and the California Class seek an order requiring Defendant to register its clause with the AAA and otherwise comply with the AAA's rules, and to compel arbitration in which Defendant "shall pay reasonable attorney's fees and costs related to the arbitration." *Id.* § 1281.97(b)(2).

## COUNT III – N.Y. Gen. Bus. Law § 349

## (On Behalf of Plaintiffs and all Classes)

104.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

105.    New York General Business Law ("GBL") § 349 states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

106.    Defendant has engaged in deceptive acts and practices by making every consumer agree to its Terms, which waive their right to a jury trial and require binding arbitration before the AAA, while simultaneously failing to provide the AAA with its arbitration clause for review, as is required for the AAA to administer the arbitrations.

107.    Defendant has engaged in deceptive acts and practices by ignoring Plaintiffs' and the Classes' notices of dispute and by not engaging in informal dispute resolution.

108.    Defendant has engaged in deceptive acts and practices by ignoring the AAA's request that it register its clause, preventing Plaintiffs and the Classes from proceeding in arbitration.

109.    NY GBL § 349 applies to Plaintiffs and other non-New York resident class members because the State of New York has an interest in regulating Defendant's conduct within and emanating from New York and because Defendant's conduct in New York has a broad impact on consumers at large.

110.    Defendant Advance Publications, Inc. d/b/a Condé Nast is a New York corporation and is headquartered in New York, New York.

111.    Numerous members of Defendant's legal and privacy teams are based in New York, including, but not limited to, its Chief Legal Officer and Corporate Secretary; Senior Deputy General Counsel and Executive Vice President; Executive Vice President & Senior Deputy General Counsel, Transactions and M&A; Senior Counsel, IP and Content Integrity at Condé Nast; multiple Senior Counsel and Deputy General Counsel; Associate General Counsel and Vice President at Advance; and its Global Head of Litigation.

112.    Upon information and belief, the relevant personnel that caused Defendant to adopt its Terms and arbitration clause are located in New York. In fact, Defendant's Terms explicitly state that Advance Legal is based at One World Trade Center, New York, NY 10007, and require users wishing to opt out of the Terms to send notice to the "Legal Department" at this address.

113.    . Defendant was founded by S.I. Newhouse Sr. and later led by S.I. Newhouse Jr., known for "presid[ing] over…the Manhattan media scene."[1] Defendant and its affiliates have consistently maintained headquarters across various New York locations, including Manhattan, Staten Island, and Syracuse, for over the past century.

114.    Condé Nast's flagship brands, including *The New Yorker, Vogue, Glamour, Vanity Fair, GQ, Architectural Digest,* and *Bon Appétit*, are all based in New York, as is CEO Roger Lynch and the majority of Condé Nast's Executive Leadership Team. In 2015, Condé Nast employed over 3,000 individuals at its New York City headquarters.[2]

---

[1] Sydney Ember, "A Media Empire Loses Its King. What Now?" (2017), https://www.nytimes.com/2017/10/01/business/conde-nast-si-newhouse.html
[2] Charles V. Bagli, "Condé Nast Moves Into the World Trade Center as Lower Manhattan Is Remade," (2014), https://www.nytimes.com/2014/11/03/nyregion/conde-nast-moves-into-the-world-trade-center-as-lower-manhattan-is-remade.html.

115.    Furthermore, Condé Nast and its subsidiaries organize, or are otherwise closely associated with, significant New York events, such as the Met Gala, an annual fundraising event for New York City's Metropolitan Museum of Art, and New York Fashion Week, a leading global fashion event. Condé Nast conducts extensive business in New York and exercises considerable influence over New York consumers.

116.    Defendant's Terms are governed by New York law and mandate that any suit not adjudicated in arbitration be brought in New York.

117.    As for claims brought in arbitration, the Terms state that all claims are governed by New York law:

> The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. The laws of the United States, State of New York, without regard to any principles of conflict of laws, applies to any arbitration under this section.

118.    As for claims brought outside arbitration, such claims must be brought in New York and are governed by New York law, regardless of any conflict of laws:

> [Claims not in arbitration] will be resolved exclusively by a state or federal court located in New York, New York, and you specifically consent to the personal jurisdiction of such courts and waive any claim of forum non-conveniens. Should there be a conflict between the laws of New York, and any other laws, the conflict will be resolved in favor of New York law.

119.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in their own name to enjoin such unlawful acts or practices, an action to recover their actual damages or $50, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition

to $1,000 per violation, if the court finds that the Defendants willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

120.    The practices employed by Defendant were directed to customers and violate GBL § 349.

121.    Plaintiffs and the class members have been injured by Defendants' deceptive acts or practices of failing to register its arbitration clause with the AAA, notwithstanding that Defendant requires every subscriber to its magazines to arbitrate claims before the AAA and waive the right to a jury.

122.    Plaintiffs and the class members have no adequate remedy at law.

123.    Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiffs and the Classes and will continue to damage Plaintiffs and the Classes unless enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendants as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes compensatory damages and actual damages, to be determined by proof;

C.    awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.    for punitive damages;

E.    for civil penalties;

F.      for injunctive relief;

G.      for an order compelling arbitration with Defendant to pay costs pursuant to S.B. 707;

H.      for declaratory and equitable relief, including restitution and disgorgement;

I.      awarding Plaintiffs and the Classes the costs of prosecuting this action;

J.      awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable
        by law;

K.      awarding pre-judgment and post-judgment interest; and

L.      granting any other relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: September 27, 2024                    **JANOVE PLLC**

                                            By: <u>*/s/ Raphael Janove*</u>
                                            Raphael Janove
                                            500 7th Ave., 8th Fl.
                                            New York, NY 10018
                                            (646) 347-3940
                                            raphael@janove.law

                                            Liana Vitale
                                            979 Osos St., Ste. A5
                                            San Luis Obispo, CA 93401
                                            (805) 505-9550
                                            liana@janove.law


                                            **HARTLEY LAW PLLC**
                                            Matt Hartley (*pro hac vice forthcoming*)
                                            200 E. Van Buren St., 3rd Fl.
                                            Phoenix, AZ 85004
                                            (844) 844-1444
                                            matt.hartley@hartleylawusa.com


                                            *Attorneys for Plaintiffs and the Proposed Classes*