**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOSIN BALOGUN and ALEXANDRA MASON, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 1:24-cv-07326-VSB |
| v. | ORAL ARGUMENT REQUESTED |
| ADVANCE MAGAZINE PUBLISHERS INC. d/b/a CONDÉ NAST, | |
| Defendant. | |

**DEFENDANT CONDÉ NAST'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT .................................................................................1

II.    BACKGROUND ....................................................................................................2

III.   LEGAL STANDARD.............................................................................................5

       A.    Rule 12(b)(1)..............................................................................................5

       B.    Rule 12(b)(6) ..............................................................................................6

IV.    ARGUMENT ........................................................................................................7

       A.    This Court Lacks Subject-Matter Jurisdiction .......................................7

       B.    Even If the Court Had Subject-Matter Jurisdiction, the Complaint
             Should Be Dismissed ................................................................................9

             1.    *Plaintiff Does Not State a Claim Under GBL § 349* ...................9

             2.    *Plaintiffs Do Not State a Breach of Contract Claim*.................12

             3.    *Plaintiff Does Not State a Claim Under California S.B. 707* ...14

V.     CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Arcidiacono v. Maizes & Maizes*, LLP,
    8 A.D.3d 119 (1st Dep't 2004) ............................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................... 6-7

*Bardsley v. Nonni's Foods LLC*,
    No. 20 CIV. 2979 (NSR), 2023 WL 3570550 (S.D.N.Y. May 18, 2023) ............................5, 6

*Barkett v. Sentosa Props. LLC*,
    No. 1:14–CV–01698–LJO-JLT, 2015 WL 502319 (E.D. Cal. Feb. 5, 2015)........................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................6

*Berry v. Frazier*,
    90 Cal. App. 5th 1258 (2023) ...............................................................................16

*Blockbuster, Inc. v. Galeno*,
    472 F.3d 53 (2d Cir. 2006)....................................................................................5

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
    No. 21-cv-3610 (JGK), 2022 WL 837596 (S.D.N.Y. Mar. 21, 2022).................................3

*Colavito v. N.Y. Organ Donor Network, Inc.*,
    438 F.3d 214 (2d Cir. 2006)..................................................................................5

*Cunningham v. Prudential Prop. & Cas. Ins. Co.*,
    489 A.2d 875 (Pa. Super. Ct. 1985).........................................................................14

*Donahue v. Ferolito, Vultaggio & Sons*,
    13 A.D.3d 77 (1st Dep't 2004) ......................................................................... 10-11

*Fero v. Excellus Health Plan, Inc.*,
    502 F. Supp. 3d 724 (W.D.N.Y. 2020).....................................................................11

*First Invs. Corp. v. Liberty Mut. Ins. Co.*,
    152 F.3d 162 (2d Cir. 1998).................................................................................12

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
    669 F. Supp. 2d 405 (S.D.N.Y. 2009)......................................................................12

*Gale v Int'l Bus. Machines Corp.*,
    9 A.D.3d 446 (2d Dep't 2004) ..............................................................................11

*Golden v. NBCUniversal Media, LLC*,
    688 F. Supp. 3d 150 (S.D.N.Y. 2023).......................................................................3

*Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*,
    304 F.3d 476 (5th Cir. 2002) ................................................................................14

*Hernandez v. Sohnen Enters., Inc.*,
    102 Cal. App. 5th 222 (2024) ..........................................................................14, 15

*Hu v. City of New York*,
    927 F.3d 81 (2d Cir. 2019)......................................................................................7

*In re Galena Biopharma, Inc. Derivative Litig.*,
    83 F. Supp. 3d 1047 (D. Or. 2015) ......................................................................16

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    No. 14 Civ. 6228 (VSB), 2024 WL 1994205 (S.D.N.Y. May 6, 2024)
    (Broderick, J.) .......................................................................................................16

*Kaufman v. Sirius XM Radio, Inc.*,
    474 Fed. App'x. 5 (2d Cir. 2012)...........................................................................11

*Lin v. Canada Goose US, Inc.*,
    640 F. Supp. 3d 349 (S.D.N.Y. 2022)....................................................................11

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020) .............................................................11-12

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)....................................................................................6

*McLaughlin v. TWA Getaway Vacations, Inc.*,
    979 F. Supp. 174 (S.D.N.Y. 1997).........................................................................8

*Miller v Kornella Corp.*,
    229 N.Y.S.2d 675 (Sup. Ct. 1962) ........................................................................13

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008)....................................................................................5

*Nealy v. U.S. Surgical Corp.*,
    587 F. Supp. 2d 579 (S.D.N.Y. 2008)................................................................9-10

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)..................................................................................10

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ...............................................................................................9

*Porsch v. LLR, Inc.*,
  No. 18CV9312 (DLC), 2019 WL 3532114 (S.D.N.Y. Aug. 2, 2019).....................................9

*Posner v. Minn. Mining & Mfg. Co.*,
  713 F. Supp. 562 (E.D.N.Y. 1989) ....................................................................................12

*Preira v. Bancorp Bank*,
  885 F. Supp. 2d 672 (S.D.N. Y. 2012)................................................................................10

*Quintana v. B. Braun Med. Inc.*,
  No. 17 Civ. 6614 (ALC), 2018 WL 3559091 (S.D.N.Y. July 24, 2018)...............................12

*Rahaman v. Citibank, N.A.*,
  No. 2:22-cv-08121-SPG-JPR, 2023 WL 6851739 (C.D. Cal. Aug. 22, 2023)......................15

*Robinson v. Gov't of Malay.*,
  269 F.3d 133 (2d Cir. 2001).................................................................................................6

*Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*,
  521 F. Supp. 3d 222 (E.D.N.Y. 2021) ..................................................................................3

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43 (1999) ..........................................................................................................10

*Suero v. NFL*,
  No. 22-CV-31 (AKH) (BCM), 2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) ......................7

*Vecchia v. Town of North Hempstead*,
  927 F. Supp. 579 (E.D.N.Y. 1996) .....................................................................................16

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*,
  70 Cal. App. 4th 55 (1999) .................................................................................................16

*Wallrich v. Samsung, Elecs. Am., Inc.*,
  106 F.4th 609 (7th Cir. 2024) .............................................................................................13

*Wood v. Maguire Auto., LLC*,
  508 F. App'x 65 (2d Cir. 2013) ............................................................................................6

*Wright v. Publishers Clearing House, Inc.*,
  372 F. Supp. 3d 61 (E.D.N.Y. 2019) ..................................................................................10

**Statutes**

9 U.S.C. § 1 ("FAA")...............................................................................................................3, 15

28 U.S.C. § 1332.................................................................................................................1, 5, 9

Cal. Arbitration Act ("CAA").................................................................................................1, 15

Cal. Civ. Proc. § 1281.97 ...........................................................................14, 15, 16, 17

Cal. Civ. Proc. § 1281.99 ..................................................................................................17

N.Y. Gen. Bus. Law § 349 ..................................................................................1, 8, 9, 10

**Other Authorities**

Cal. S.B. 707 ........................................................................................................1, 14, 16

Fed. R. Civ. P. 8(a)(2) ..........................................................................................................6

Fed. R. Civ. P. 12(b)(1) ...............................................................................................3, 5, 6

Fed. R. Civ. P. 12(b)(6) ....................................................................................................3, 6

## I.      PRELIMINARY STATEMENT

This action arises from a mass arbitration that Plaintiffs Tosin Balogun, Alexandra Mason, and their counsel sought to lodge at the American Arbitration Association ("AAA") against Advance Magazine Publishers, Inc. (doing business as Condé Nast).  At the time they filed the arbitration demands, however, AAA was not Condé Nast's arbitration provider under the arbitration agreement in Condé Nast's User Agreement (i.e., its website terms of service)— and had not been for several months.  Rather than simply present their claims to the proper provider, National Arbitration and Mediation ("NAM"), or file a petition to compel arbitration at AAA, Plaintiffs instead initiated this purported class action based on Condé Nast's unwillingness to arbitrate at Plaintiffs' preferred arbitration provider.  Asserting claims under breach of contract, New York General Business Law ("GBL") § 349, and S.B. 707 under the California Arbitration Act ("CAA"), Plaintiffs seek more than $5 million in damages—a number Plaintiffs apparently draw out of thin air because the Complaint lacks any allegation that substantiates it. Not surprisingly given that Plaintiffs are trying to fit the square peg of a motion to compel arbitration into the round hole of a putative class action, Plaintiffs' Complaint fails as a matter of law for multiple independent reasons.

As a threshold matter, the Court must dismiss the action for lack of subject-matter jurisdiction because the Complaint does not establish the $5 million amount-in-controversy minimum required for jurisdiction under the Class Action Fairness Act ("CAFA").  Plaintiffs do not identify any actual damages—let alone $5 million—such as any filing fee incurred from filing at AAA or damage caused by Condé Nast's alleged "unreasonable delay" in arbitrating (at most three months).  Nor would statutory damages under GBL § 349 enable Plaintiffs to reach the CAFA minimum.  Section 349 provides for $50 per violation in statutory damages.  And

while the Complaint alleges a class that "exceeds 100" members (even though AAA's letter stated that it only received a filing of 25 individual demands), even assuming 100 class members prevailed in proving liability, the total aggregate recovery would be $5,000. Indeed, even if the class contained 1,000 members, the amount in controversy would be $50,000—a sliver of the $5 million threshold. Put simply, Plaintiffs do not come close to establishing CAFA's amount-in-controversy requirement. Nor will they ever be able to do so.

Even if this Court did have subject-matter jurisdiction, which it does not, the Complaint must still be dismissed because the facts it pleads do not adequately allege any of the causes of action Plaintiffs assert. Plaintiffs' breach of contract claim fails because the facts Plaintiffs plead do not identify a specific agreement to arbitrate between the parties, a breach by Condé Nast, or any injury from Condé Nast's alleged unwillingness to arbitrate at AAA instead of NAM. Plaintiffs' GBL § 349 claim fails because Plaintiffs do not allege a cognizable injury under the statute, let alone one that Condé Nast caused. And Plaintiff Balogun's S.B. 707 claim fails because the CAA does not apply at all—Condé Nast's User Agreement ("UA") is governed by the Federal Arbitration Act, not the CAA. Even if S.B. 707 did apply, however, violation of that provision is not an independent cause of action.

The Complaint should be dismissed.

## II.    BACKGROUND

Plaintiffs here purport to seek arbitration of several alleged privacy claims that arose from their browsing of Condé Nast's public websites. Compl. ¶¶ 5-6. Like many website operators, Condé Nast publishes and periodically updates terms of service in the form of a UA. *See* Compl. Ex. A (UA dated April 27, 2023). Plaintiffs allege that they agreed to the UA and as a result entered into an agreement with Condé Nast to arbitrate Plaintiffs' privacy claims.

2

Compl. ¶¶ 21-22, 30, 33.  In its very first section, the UA contains a change provision informing website visitors that the agreement "may be modified from time to time, so check back often." *See* Compl. Ex. A, at 3 (section titled "Introduction, Arbitration Notice & Class Action Waiver").  When there is an update, Condé Nast adjusts the "Last Updated" date at the top of the page.  *See id.*

In April 2024, Condé Nast updated the UA to change its arbitration provider from AAA to NAM.  *See* Decl. of Jeffrey Landis ("Landis Decl.") Ex. 1 (UA with date of April 16, 2024).[1] Pursuant to the change provision, Condé Nast adjusted the "Last Updated" date.  *Id.*  Besides designating NAM and NAM's consumer arbitration rules, there were no other changes in the April 2024 terms.  *Compare* Compl. Ex. A, *with* Landis Decl. Ex. 1.  Both the April 2023 and April 2024 terms stated they were governed by the FAA.  *See* Ex. A, at 22 ("The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. The laws of the United States, State of New York, without regard to any principles of conflict of laws, applies to any arbitration under this section."); Landis Decl. Ex. 1, at 25 (same).

---

[1] The Court may fully consider the UA dated April 16, 2024 as part of deciding Condé Nast's motion to dismiss under Rule 12(b)(1), as discussed below.  *See infra* at 6.  The Court may also do so in resolving Condé Nast's Rule 12(b)(6) motion.  The Complaint contains numerous references to Condé Nast's UA, and thus the agreement is integral to the Complaint.  *See, e.g.,* Compl. ¶¶ 4, 30-36, 39, 40, 42; *see also, e.g.*, *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc*., 521 F. Supp. 3d 222, 233 n.2 (E.D.N.Y. 2021) (considering an agreement to license the mark on a motion to dismiss a trademark infringement claim because the license was "integral" to the complaint).

The April 16, 2024 version of the UA is also judicially noticeable because it is publicly available and there is no doubt about its authenticity.  *See Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-cv-3610 (JGK), 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022) (considering website terms of service on motion to dismiss because it was publicly available).  Courts in this District commonly take judicial notice of webpages archived on the Wayback Machine in particular.  *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 165 n.14 (S.D.N.Y. 2023) (taking judicial notice of webpages accessed on the Wayback Machine and collecting similar cases).

On June 17, notwithstanding Condé Nast's change of its arbitration provider to NAM two months earlier, Plaintiffs' counsel contacted AAA to try to open individual arbitrations against Condé Nast.  *See* Compl. Ex. B.  One month later, on July 23, AAA responded confirming receipt of "a Mass Arbitration caseload filing of 25 individual Demands for Consumer Arbitration."  *Id*.  The AAA's letter, which Condé Nast did not receive at the time, requested that Condé Nast submit a copy of its "current or proposed" arbitration agreement for review in order for the AAA to begin case administration.  *Id*.  Critically, AAA limited that prerequisite to those "businesses that provide for AAA arbitration in a consumer contract."  *Id*.  In both June (when Plaintiffs' counsel Janove PLLC filed) and July (when AAA sent its letter), Condé Nast's arbitration agreement did not provide for AAA arbitration.  Submitting Condé Nast's "current or proposed" consumer agreement to AAA would have meant submitting a contract containing no mention of AAA.

On August 12, the AAA stated it was declining to administer the arbitrations.  Compl. Ex. C.  At this point, nearly four months had passed since Condé Nast switched to NAM.  Plaintiffs still did not file the arbitrations at NAM.

Instead, on September 27, Plaintiffs commenced this action asserting putative class action claims for breach of contract and violation of California S.B. 707 and NY GBL § 349, all based on Condé Nast's alleged "failure" to arbitrate Plaintiffs' claims at AAA.  *See, e.g.*, Compl. ¶ 1. Remarkably, the Complaint makes no mention of the UA's requirement to arbitrate at NAM or Plaintiffs' refusal to simply file at NAM.  Nevertheless, Plaintiffs allege they were damaged because Condé Nast supposedly failed to arbitrate at AAA.  *Id.* ¶ 24.  Plaintiffs seek damages under the breach of contract and GBL § 349 counts, including $50 per violation under the GBL. *Id.* ¶¶ 97, 103, 119. While the Complaint also notes that GBL § 349 provides for up to $1,000 in

treble damages for willful or knowing violations, it does not allege that Condé Nast violated the section willfully or knowingly. *Id.* ¶ 119. Plaintiffs plead no other facts supporting money damages. Nevertheless, Plaintiffs invoke this Court's limited jurisdiction under CAFA, pleading summarily that the aggregate amount in controversy exceeds $5 million exclusive of interests and costs, the number of members of the proposed classes exceeds 100, and many members of the proposed classes are citizens of different states than Condé Nast. *Id.* ¶ 24.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Determining the existence of subject-matter jurisdiction is a threshold inquiry, and the district court must dismiss a claim for lack of subject-matter jurisdiction under Rule 12(b)(1) when it lacks the statutory or constitutional power to adjudicate it. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *cert. granted*, 558 U.S. 1047 (2009), *aff'd*, 561 U.S. 247 (2010). The party asserting subject-matter jurisdiction has the burden of proving it. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006). CAFA confers subject-matter jurisdiction to a district court only if the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are at least 100 members in the proposed class; and there is minimal diversity. 28 U.S.C. § 1332(d)(2). The plaintiff must establish to a "reasonable probability" that the aggregate claims are in excess of $5 million. *Blockbuster*, 472 F.3d at 58. Courts may recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006), but this presumption is available "only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy," *Bardsley v. Nonni's Foods LLC*, No. 20 CIV. 2979 (NSR), 2023 WL 3570550, at *4 (S.D.N.Y. May 18, 2023). Even then, a defendant can rebut the presumption by

showing that the complaint reflects to "a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Id.* Conclusory or boilerplate allegations that the case satisfies the amount-in-controversy threshold are not entitled to the presumption of truth. *Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (summary order) (applying *Iqbal*'s plausibility standard to amount in controversy).

The court may refer to evidence outside the pleadings in resolving a motion to dismiss under Rule 12(b)(1). *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Indeed, "[i]t 'must' do so if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140-41 n.6 (2d Cir. 2001). "[I]n close cases, any 'doubts are resolved against jurisdiction out of respect for the limited jurisdiction of the federal courts and the rights of states.'" *Bardsley*, 2023 WL 3570550, at *4 (alteration adopted).

### B.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* The rule that a court accept as true allegations in a complaint is "inapplicable to legal conclusions," *id.*, and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration adopted) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task" that requires a court "to draw on its judicial experience and

6

common sense." *Id.* "In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (alteration adopted).

## IV.    ARGUMENT

### A.    This Court Lacks Subject-Matter Jurisdiction

The Complaint must be dismissed first because Plaintiffs do not satisfy their burden of establishing subject-matter jurisdiction under CAFA.  As an initial matter, the Complaint is devoid of any factual allegations suggesting the jurisdictional minimum is satisfied.  Plaintiffs make the bare assertion that "the aggregate amount in controversy exceeds $5 million," but do not allege out-of-pocket damages, approximate the amount they are reasonably likely to recover under each count, or otherwise explain how that number was reached.  Such allegations are inadequate to support federal jurisdiction, and courts in such circumstances will dismiss the complaint.  *See, e.g., Suero v. NFL*, No. 22-CV-31 (AKH) (BCM), 2022 WL 17985657, at *8 (S.D.N.Y. Dec. 16, 2022) (recognizing no presumption where the plaintiffs "allege in general terms that the dispute 'involves monetary damages in excess of $5,000,000,' and seek '$2 billion in compensatory damages' . . . but plead no facts that would support either figure" (internal citations omitted)).  This Court should do the same.

Even if the Court in the first instance accepts Plaintiffs' unsupported allegation of $5 million in damages, the Complaint must still be dismissed because it is inconceivable that Plaintiffs could recover that amount.  Plaintiffs do not seek money damages under S.B. 707.  *See* Compl. ¶¶ 98-103.  Thus, they must rely on their breach of contract and GBL § 349 claims to satisfy the jurisdictional minimum.  As to breach of contract, the Complaint asserts two sources of injuries, initiating arbitrations at AAA that Condé Nast supposedly did not intend to

participate in, and "unreasonable delay" in resolving Plaintiffs' claims.  *Id.* ¶¶ 94-95, 121.  But

those allegations do not support any damages, much less aggregate damages of $5 million.

Nowhere does the Complaint allege Plaintiffs undertook any costs to file at AAA.  Indeed, the

Complaint does not even allege that AAA ever issued Plaintiffs an invoice for filing this matter

or that Plaintiffs paid AAA filing fees.  Even if Plaintiffs had pled as damages the costs to

initiate arbitration, AAA charges a flat $3,125 per mass arbitration filing, a fraction of $5

million.[2]  *McLaughlin v. TWA Getaway Vacations, Inc*., 979 F. Supp. 174, 176 (S.D.N.Y. 1997)

(taking the amount of damages that would make plaintiff whole for the alleged breach of contract

and dismissing for lack of subject-matter jurisdiction).

     Nor would any "unreasonable delay" cause damages sufficient to support federal

jurisdiction.  First, any delay was purely Plaintiffs' doing.  They and their counsel chose to bring

claims in AAA rather than simply file at NAM (likely so their counsel could use AAA's fee

structure to leverage a settlement offer from Condé Nast).  Even now, they persist in pursuing

this litigation instead of simply arbitrating at NAM (again, likely so they can exert settlement

leverage).  Second, even if they were delayed, Plaintiffs can identify no prejudice or other injury

from such delay.  They first sought to initiate arbitration in June of this year, barely three months

before they filed this action in court.  *See* Compl. ¶ 48.

     Plaintiffs also cannot satisfy the jurisdictional minimum based on their GBL § 349 claim.

GBL § 349 provides for statutory damages of $50 per violation (unless actual damages are

higher).  N.Y. Gen. Bus. Law § 349(h).  Even though according to AAA, Janove only filed 25

demands (*see* Compl. Ex. B), the Complaint estimates more than 100 putative class members—

[2] *See*
www.adr.org/sites/default/files/Consumer_Mass_Arbitration_and_Mediation_Fee_Schedule.pdf.

but even assuming each of those 100 people proves his or her claim, that would result in aggregate damages of $5,000.  *See* Compl. ¶ 24.  Indeed, even if the class consisted of 1,000 members that would only be $50,000 in GBL statutory damages.[3]  *See Porsch v. LLR, Inc.*, No. 18CV9312 (DLC), 2019 WL 3532114, at *4 (S.D.N.Y. Aug. 2, 2019) (dismissing class action where GBL § 349 damages would total less than $5 million).  Any way you slice it, there is no plausible basis for CAFA jurisdiction here, and the Complaint should be dismissed for this reason alone.

**B.    Even If the Court Had Subject-Matter Jurisdiction, the Complaint Should Be Dismissed**

Even if the Court had subject-matter jurisdiction (which it does not), the Complaint still must be dismissed because Plaintiffs fail to state a claim upon which relief can be granted.  Plaintiffs' GBL § 349 claim fails because Plaintiffs do not allege a cognizable injury as required to state a GBL § 349 claim, let alone one that Condé Nast caused.  Plaintiffs' breach of contract claim fails because Plaintiffs do not adequately identify an agreement to arbitrate between them and Condé Nast that Condé Nast breached, or any injury from Condé Nast's alleged breach.  And Plaintiffs' S.B. 707 claim fails because S.B. 707 does not apply here and, even if it did, does not create an independent cause of action.

*1.   Plaintiff Does Not State a Claim Under GBL § 349*

Plaintiffs fail to state a GBL § 349 claim.  A plaintiff pursuing a GBL § 349 claim must allege (1) the challenged act or practice was consumer oriented; (2) it was misleading in a material way; and (3) they suffered injury as a result of the deceptive act.  *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).  In addition,

---

[3] Even assuming the maximum damages amount for willful violations (which Plaintiffs do not allege) and a class of 1,000 members, Plaintiffs would still fall well short of the jurisdictional minimum (1,000 class members x $1,000 = $1,000,000).

although reliance is not an element of a § 349 claim, "[t]he causation element is essential: The plaintiff must show that the defendant's material deceptive act caused the injury." *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (cleaned up).  Here, Plaintiffs do not adequately allege a cognizable GBL § 349 injury, let alone that Condé Nast caused that injury.

GBL § 349 "does not create a strict liability scheme in which consumers may pursue private remedies simply because a defendant sent deceptions into the marketplace." *Wright v. Publishers Clearing House, Inc.,* 372 F. Supp. 3d 61, 67 (E.D.N.Y. 2019).  Rather, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc*., 802 F.3d 289, 302 (2d Cir. 2015).  Here, Plaintiffs do not allege they paid for access to Condé Nast's website (which gives rise to their underlying claims), let alone that they would have paid less for that access or not subscribed at all had they known that Condé Nast would not arbitrate Plaintiffs' claims at AAA as Plaintiffs now desire.  This is fatal to the GBL § 349 claim.

Plaintiffs offer only the bare assertion that they were "injured by [Condé Nast's] deceptive acts or practices of failing to register its arbitration clause with the AAA."  Compl. ¶ 121.  New York law is clear, however, that a plaintiff asserting a claim under GBL § 349 may not "set[] forth deception as both act and injury," such as by relying solely on an allegation they bought "a product that they would not have purchased, absent a manufacturer's deceptive commercial practices."  *Small v. Lorillard Tobacco Co*., 94 N.Y.2d 43, 56 (1999).  For this reason, courts routinely reject GBL § 349 claims where, like here, the only injury alleged is the supposed deception.  *See, e.g., Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) ("Plaintiff's claim sets forth deception as both act and injury and, thus, contains no manifestation of either pecuniary or actual harm" (cleaned up)); *Donahue v. Ferolito, Vultaggio*

10

*& Sons*, 13 A.D.3d 77, 78 (1st Dep't 2004) (finding that plaintiffs "have impermissibly set up the deception as both act and injury, a theory specifically rejected by our courts").[4]

Plaintiffs also do not allege that Condé Nast's purported deceptive acts ***caused*** their injury as required to allege a violation of GBL § 349.  To plead causation, a plaintiff must allege facts showing he or she was personally misled or deceived.  *See, e.g., Fero v. Excellus Health Plan, Inc*., 502 F. Supp. 3d 724, 739 (W.D.N.Y. 2020) ("[C]ase law consistently holds that 'in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived.'").  Conversely, "[i]f the plaintiff did not see any of the[] statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury."  *Gale v Int'l Bus. Machines Corp*., 9 A.D.3d 446, 447 (2d Dep't 2004).

Here, Plaintiffs do not allege they saw or reviewed Condé Nast's UA—let alone the arbitration provision within it—and thus fail to allege they suffered injury as a result of Condé Nast's allegedly deceptive acts.  This also forecloses their GBL § 349 claim.  *See Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 360 (S.D.N.Y. 2022) ("These allegations fall short because they do not include that Plaintiff saw the misrepresentations prior to his purchase and therefore made the purchases 'as a result' of the misrepresentations."); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (dismissing NY GBL § 349 claim where "[p]laintiffs allege that they checked Defendant's website, but . . . d[id] not allege that

---

[4] Plaintiff Balogun's GBL § 349 claim fails for the additional reason that she is a resident of California and does not allege she received any allegedly deceptive information in New York. New York Court of Appeals precedent "forecloses plaintiffs' reliance on allegations that deceptive terms and conditions were published on a website controlled from New York, when there is no further allegation of plaintiffs' receipt of this information in New York." *See Kaufman v. Sirius XM Radio, Inc.,* 474 Fed. App'x. 5, 8 (2d Cir. 2012).

they viewed [the representation] prior to purchasing [the product]"); *Quintana v. B. Braun Med. Inc.,* No. 17 Civ. 6614 (ALC), 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (dismissing NY GBL § 349 where complaint's "allegations d[id] not suggest [p]laintiff ever saw these statements and under what circumstances").

### 2. *Plaintiffs Do Not State a Breach of Contract Claim*

Plaintiffs' breach of contract claim also fails. Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. *First Invs. Corp. v. Liberty Mut. Ins. Co*., 152 F.3d 162, 168 (2d Cir. 1998). Plaintiffs fail to adequately allege the first, third, and fourth of these elements.

Plaintiffs fail to adequately allege the first element of a breach of contract claim—the formation of an agreement. Plaintiffs attach to the Complaint the April 27, 2023 version of Condé Nast's UA, which they claim were the terms that were "effective when Plaintiffs' claims accrued." Compl. ¶ 4. But notably absent are any facts showing when or how Plaintiffs actually agreed to the UA (or, for that matter, when their claims accrued). This is necessary for Plaintiffs to state a breach of contract claim. *See Posner v. Minn. Mining & Mfg. Co*., 713 F. Supp. 562, 563–64 (E.D.N.Y. 1989) (dismissing a breach of contract claim where "[a]lthough the existence of a contract is alleged, plaintiffs fail to set forth any specific information as to when the agreement was made, the terms of the agreement upon which liability is predicated, or any other evidence supporting the formation of an agreement"); *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) ("To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract . . . ."). Plaintiffs' failure to plead facts showing agreement to the UA is particularly glaring in the context of a demand to arbitrate under website terms:

"Identifying a generic arbitration agreement and then independently listing the names and addresses of alleged consumers without doing anything to link those consumers to the agreement does not satisfy the 'existence of an arbitration agreement' element—like any agreement, the element requires a showing of assent between the relevant parties." *Wallrich v. Samsung, Elecs. Am., Inc*., 106 F.4th 609, 619 (7th Cir. 2024). Here, Plaintiffs offer nothing about when and how they assented to the version of the UA they seek to apply.

Even if Plaintiffs adequately alleged they agreed to the April 27, 2023 version of the UA, the express language of that UA refutes the notion that Condé Nast committed any breach. *See Miller v Kornella Corp*., 229 N.Y.S.2d 675, 676 (Sup. Ct. 1962) (noting that copy of contract attached to the complaint prevails over complaint's allegations purporting to describe contract). First, the April 27, 2023 UA states that it "may be modified from time to time" and that "[c]ontinued access, visitation and/or use of the Service by you, or continued receipt of a Product, will constitute your acceptance of any changes or revisions to the User Agreement." *See* Compl. Ex. A, at 3. Here, as discussed above, Condé Nast modified its UA to make NAM its arbitration provider in April 2024—two months before Plaintiffs filed their arbitration demands with AAA. *See supra* at 3; Compl. ¶ 48 (identifying June 17, 2024 as the date Plaintiffs' counsel filed their demands with AAA). Plaintiffs do not allege that Condé Nast refused to arbitrate Plaintiffs' claims at NAM. Second, the arbitration provision within the April 27, 2023 version of the UA states that "issues relating to the scope, application, and enforceability of this arbitration provision are for the court to decide." Compl. Ex. A, at 22. Thus, if Plaintiffs wanted to have the prior UA apply notwithstanding the new UA that went into place two months before they sought arbitration, the place to raise that issue was in court, not by filing arbitration at AAA.

Finally, Plaintiffs fail to adequately allege breach of contract damages. A breach of contract claim must be dismissed if the plaintiff fails to "allege any basis for an award of damages, or to plead facts from which damages attributable to defendants' conduct might be reasonably inferred." *Arcidiacono v. Maizes & Maizes*, *LLP*, 8 A.D.3d 119, 120 (1st Dep't 2004) (internal citations omitted). That is the case here. Plaintiffs plead no facts showing how they were damaged by Condé Nast's alleged failure to arbitrate at AAA as opposed to NAM. That is because they were not—especially given they had the option to seek to compel arbitration at AAA if they wanted. *See Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) ("[E]nforcement of an agreement to arbitrate under the FAA does not appear to include any mechanism beyond those geared toward returning the parties to arbitration, thus appearing not to authorize compensation by a court to parties in the form of damages prior to issuance of an arbitral award."); *Cunningham v. Prudential Prop. & Cas. Ins. Co.*, 489 A.2d 875, 878 n.1 (Pa. Super. Ct. 1985) ("It is difficult to comprehend in what manner a party can be damaged by another's failure to arbitrate when the former has available to him the means by which to compel arbitration."). The mere fact that Plaintiffs' ***lawyers*** might prefer to arbitrate Plaintiffs' claims at AAA does not change that Plaintiffs have not alleged any injury from Condé Nast's alleged unwillingness to arbitrate there as opposed to NAM.

### 3. *Plaintiff Does Not State a Claim Under California S.B. 707*

Finally, Plaintiff Balogun's S.B. 707 claim must be dismissed because it is procedurally improper for multiple independent reasons. First, S.B. 707 does not apply here at all. The Complaint alleges that Condé Nast violated "SB 707 § 1281.97," a provision of the CAA. Compl. ¶ 100; *see Hernandez v. Sohnen Enters., Inc.,* 102 Cal. App. 5th 222, 233 (2024) ("In 2019, the California Legislature added sections 1281.97, 1281.98, and 1281.99 to the California Arbitration Act (CAA; § 1280 et seq.) . . . ."). Condé Nast's UA, however, expressly states that

the FAA, not the CAA, governs interpretation and enforcement of the UA's arbitration provision. *See* Landis Decl. Ex. 1, at 25; Compl. Ex. A, at 22.  As such, the CAA does not apply.  *See Hernandez*, 102 Cal. App 5th at 242 ("The parties selected the procedural provisions of the FAA and the Federal Rules of Civil Procedure, and therefore, the procedures of the CAA, including section 1281.97, do not apply. The order based on section 1281.97 must be reversed."); *Rahaman v. Citibank, N.A.,* No. 2:22-cv-08121-SPG-JPR, 2023 WL 6851739, at *2 (C.D. Cal. Aug. 22, 2023) (concluding that the CAA does not apply to an action brought in federal court where the arbitration agreement stated it was governed by the FAA and the plaintiff "has not persuasively demonstrated why the CAA should apply rules of procedure here").

Second, even if S.B. 707 applied here, the claim must be dismissed because violation of that provision does not give rise to an independent cause of action.  California Code of Civil Procedure Section 1281.97(b) provides two options for a consumer asserting the drafter of a consumer arbitration provision failed to pay fees needed to commence an arbitration: (1) withdraw the claim from arbitration and litigate the underlying claim in a court of appropriate jurisdiction or (2) move to compel arbitration.  Cal. Civ. Proc. § 1281.97(b)(1)-(2).  This action does neither.  Plaintiffs do not, for example, now assert the privacy claims they originally filed in arbitration before this Court based on Condé Nast's alleged repudiation of its arbitration agreement.  *See* Compl. ¶ 6.  Nor do they file a motion to compel Condé Nast to arbitrate.

Instead, Plaintiff Balogun asserts a class claim for "Relief and Sanctions Under California S.B. 707," and seeks as a remedy an order requiring Condé Nast "to register its clause with the AAA and otherwise comply with the AAA's rules, and to compel arbitration in which Defendant shall pay reasonable attorney's fees and costs related to the arbitration."  *Id.* ¶ 103.  No part of that is proper.  S.B. 707 does not create an independent cause of action.  In general, a

plaintiff may allege a statutory cause of action only if the language of the statute or its legislative history demonstrates the legislature intended to create such a right. *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62–63 (1999).  Here, while the language of S.B. 707 demonstrates the California legislature intended to provide consumers with certain **remedies** for a failure to pay arbitration fees (where the CAA applies), it does not "evidence an intent to create a separate cause of action for a violation of the statute." *Berry v. Frazier*, 90 Cal. App. 5th 1258, 1275 (2023).  This is consistent with similar remedial statutes.  *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 14 Civ. 6228 (VSB), 2024 WL 1994205, at *19 (S.D.N.Y. May 6, 2024) (Broderick, J.) ("[N]either recoupment nor setoff are causes of action, and therefore to be asserted must be coupled with an independent cause of action."); *Vecchia v. Town of North Hempstead*, 927 F. Supp. 579, 580–81 (E.D.N.Y. 1996) (holding that statute authorizing award of attorney fees to prevailing parties in certain civil rights actions does not grant independent cause of action); *Barkett v. Sentosa Props. LLC,* No. 1:14–CV–01698–LJO-JLT, 2015 WL 502319, at *18 (E.D. Cal. Feb. 5, 2015) (noting that "declaratory relief is not an independent cause of action, but a remedy"); *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1047, 1072 (D. Or. 2015) (concluding that rescission may not be asserted as a separate cause of action).  Put another way, even if Plaintiff Balogun could have obtained certain relief under S.B. 707 (if the CAA applied), she cannot maintain a cause of action for violation of S.B. 707.

Even if there was an independent cause of action under S.B. 707, the Complaint does not state a claim under the statute.  S.B. 707 is triggered if the drafting party to an arbitration agreement fails within 30 days to pay fees or costs required to advance the arbitration.  *See* Cal. Civ. Proc. §§ 1281.97(a)-(b) (presenting as a condition for relief that the drafting party be "in default" in terms of payment).  Nowhere do Plaintiffs here allege that Condé Nast failed to pay

arbitration fees, or that AAA even issued an invoice to Condé Nast. *See* Compl. ¶¶ 98-103. This does not meet the statute's basic elements. Moreover, the statute does not authorize what Plaintiff Balogun seeks. S.B. 707 authorizes specific enumerated remedies based on which of the two designated alternatives the consumer chooses. The consumer can seek to compel an arbitration "in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." Cal. Civ. Proc. § 1281.97(b)(2). In the alternative, the consumer can proceed with his or her underlying claim in court and obtain reasonable expenses ***already incurred*** as a result of the alleged breach of the arbitration agreement (as well as potentially certain "evidence," "terminating" or "contempt" sanctions). *See* Cal. Civ. Proc. §§ 1281.97(d); 1281.99. But Plaintiffs seek neither of those things. Even if S.B. 707 applied and created an independent cause of action, it does not authorize what Plaintiffs are asking for.

## V.    CONCLUSION

If Plaintiffs believe that their claims must be arbitrated at AAA even though Condé Nast changed its arbitration provider to NAM months before Plaintiffs filed their arbitration demands, they are free to file a motion to compel arbitration at AAA. But their attempt to press that issue as a putative class action in federal court fails as a matter of law for multiple reasons. Accordingly, the Complaint should be dismissed.

Dated: December 9, 2024                    Respectfully submitted,

                                           By: /s/ Jeffrey Landis
                                               Jeffrey Landis
                                               ZWILLGEN PLLC
                                               1900 M Street NW, Suite 250
                                               Washington, DC 20036
                                               Telephone: (202) 296-3585
                                               Facsimile: (202) 706-5298
                                               jeff@zwillgen.com

                                               Sheri Pan
                                               ZWILLGEN LAW LLC
                                               369 Pine Street, Suite 506
                                               San Francisco, CA 94104
                                               sheri@zwillgen.com

                                               *Counsel for Defendant*
                                               *Advance Magazine Publishers, Inc.*

18