**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOSIN BALOGUN and ALEXANDRA MASON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCE MAGAZINE PUBLISHERS INC. d/b/a CONDÉ NAST,<br><br>Defendant. | Case No. 1:24-cv-07326-VSB<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT CONDÉ NAST'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ....................................................................................................2

A. Condé Nast and Its Arbitration Provision ....................................................2

B. The Original Complaint and Motion to Dismiss............................................5

C. The Amended Complaint .............................................................................6

D. Plaintiffs' Relationships with Condé Nast ....................................................6

ARGUMENT .........................................................................................................7

I. PLAINTIFFS MUST ARBITRATE THEIR CLAIMS AT NAM .............................7

A. Plaintiffs Assented to Condé Nast's Arbitration Agreement Which Requires Plaintiffs to Arbitrate at NAM ..................................................8

B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement ...............14

II. IN THE ALTERNATIVE, THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..................................................................16

A. Plaintiffs Do Not State a Claim Under GBL § 349 ......................................17

B. Plaintiffs Do Not State a Breach of Contract Claim .....................................19

C. Plaintiff Balogun Does Not State a Claim Under California S.B. 707 ..................20

D. Plaintiffs' VPPA Class Action Claim Also Must Be Dismissed ..........................23

E. The Court Should Dismiss Plaintiffs' Class Allegations Because They Consented to a Class Action Waiver ..................................................24

CONCLUSION ......................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
742 F. Supp. 2d 367 (S.D.N.Y. 2010)....9

*Arcidiacono v. Maizes & Maizes, LLP*,
8 A.D.3d 119 (1st Dep't 2004)....20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....16, 17

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....7, 24

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....14

*Barkett v. Sentosa Props. LLC*,
2015 WL 502319 (E.D. Cal. Feb. 5, 2015)....22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....16

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015)....10

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017)....14

*Berry v. Frazier*,
90 Cal. App. 5th 1258 (2023)....22

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)....11

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
2022 WL 837596 (S.D.N.Y. Mar. 21, 2022)....4

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019)....14

*Carovillano v. Sirius XM Radio Inc.*,
2024 WL 3460040 (S.D.N.Y. July 18, 2024)....24

*Carson Optical Inc. v. eBay Inc.*,
202 F. Supp. 3d 247 (E.D.N.Y. 2016)....24

*Cruz v. Cingular Wireless, LLC*,
648 F.3d 1205 (11th Cir. 2011) .......................................................................................7

*Cunningham v. Prudential Prop. & Cas. Ins. Co.*,
489 A.2d 875 (Pa. Super. Ct. 1985).....................................................................................20

*De La Vega v. Sterling Jewelers Inc.*,
2017 WL 10605190 (C.D. Cal. July 7, 2017).......................................................................11

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)................................................................................................................7

*Donahue v. Ferolito, Vultaggio & Sons*,
13 A.D.3d 77 (1st Dep't 2004) ..............................................................................................18

*DoorDash, Inc. v. Green*,
2021 WL 5193970 (Utah Dist. Ct. Oct. 14, 2021) ......................................................... 10-11

*Edmundson v. Klarna, Inc.*,
85 F. 4th 695 (2d Cir. 2023) ..................................................................................................12

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)...........................................................................14, 16

*Fero v. Excellus Health Plan, Inc.*,
502 F. Supp. 3d 724 (W.D.N.Y. 2020) ............................................................................ 18-19

*First Invs. Corp. v. Liberty Mut. Ins. Co.*,
152 F.3d 162 (2d Cir. 1998)...................................................................................................19

*Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*,
1999 WL 637236 (S.D.N.Y. Aug. 20, 1999)......................................................................... 8-9

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012).....................................................................................14

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023).......................................................................................4

*Graham v. Bloomberg L.P.*,
2023 WL 6037974 (S.D.N.Y. Sept. 15, 2023) (Broderick, J.) ..............................................16

*Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*,
304 F.3d 476 (5th Cir. 2002) ..................................................................................................20

*Hernandez v. Sohnen Enters., Inc.*,
102 Cal. App. 5th 222 (2024) ...........................................................................................20, 21

*Horton v. Dow Jones & Co., Inc.*,
804 F. App'x 81 (2d Cir. 2020)....24

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019)....17

*In re First Am. Fin. Corp.*,
2020 WL 7051087 (C.D. Cal. Aug. 11, 2020)....25

*In re Galena Biopharma, Inc. Derivative Litig.*,
83 F. Supp. 3d 1047 (D. Or. 2015)....22

*In re Livent, Inc. Noteholders Secs. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001)....23

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
2024 WL 1994205 (S.D.N.Y. May 6, 2024) (Broderick, J.)....22

*Instituto De Resseguros Do Brasil v. First State Ins. Co.*,
221 A.D.2d 266 (1st Dep't 1995)....9

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x. 5 (2d Cir. 2012)....18

*Lewis v. Sterling Jewelers Inc.*,
2019 WL 856852 (C.D. Cal. Feb. 11, 2019)....11

*Lin v. Canada Goose US, Inc.*,
640 F. Supp. 3d 349 (S.D.N.Y. 2022)....19

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
252 F.3d 218 (2d Cir. 2001)....14

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020)....19

*Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*,
2004 WL 421793 (S.D.N.Y. Mar. 5, 2004)....25

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....8

*Micheli & Shel, LLC v. Grubhub Inc.*,
588 F. Supp. 3d 483 (S.D.N.Y. 2022)....10

*Miller v Kornella Corp.*,
229 N.Y.S.2d 675 (Sup. Ct. 1962)....19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 8

*Nealy v. U.S. Surgical Corp.*,
587 F. Supp. 2d 579 (S.D.N.Y. 2008) .......... 17

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003) .......... 8

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) .......... 17

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .......... 17

*Picha v. Gemini Tr. Co.*,
2024 WL 967182 (S.D.N.Y. Mar. 5, 2024) .......... 12, 13, 14

*Preira v. Bancorp Bank*,
885 F. Supp. 2d 672 (S.D.N.Y. 2012) .......... 18

*Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*,
521 F. Supp. 3d 222 (E.D.N.Y. 2021) .......... 3

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) .......... 18

*Starke v. Gilt Groupe, Inc.*,
2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) .......... 14

*Stone v. Golden Wexler & Sarnese, P.C.*,
341 F. Supp. 2d 189 (E.D.N.Y. 2004) .......... 10

*Taylor v. TA Operating, LLC*,
2023 WL 171359 (E.D. Cal. Jan. 12, 2023) .......... 11

*TradeComet.com LLC v. Google, Inc.*,
693 F. Supp. 2d 370 (S.D.N.Y. 2010) .......... 9

*Upstate Shredding, LLC v. Carloss Well Supply Co.*,
84 F. Supp. 2d 357 (N.D.N.Y. 2000) .......... 9

*Vasell v. SeatGeek, Inc.*,
2025 WL 240912 (E.D.N.Y. Jan. 17, 2025) .......... 24

*Vecchia v. Town of North Hempstead*,
927 F. Supp. 579 (E.D.N.Y. 1996) .......... 22

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*,
70 Cal. App. 4th 55 (1999) ....................22

*Wright v. Publishers Clearing House, Inc.*,
372 F. Supp. 3d 61 (E.D.N.Y. 2019) ....................17

*XL Specialty Ins. Co. v. Otto Naumann, Ltd.*,
2015 WL 1499208 (S.D.N.Y. Mar. 31, 2015) ....................24

**Statutes**

9 U.S.C. § 4 ....................2, 7

18 U.S.C. § 2710 ("VPPA") ....................1, 7, 15,

Cal. Arbitration Act ("CAA") ....................2, 21

Cal. Civ. Proc. § 1281.97 ....................16, 20, 21, 22, 23

Cal. Civ. Proc. § 1281.99 ....................23

NY GBL § 349 ....................5, 17

**Rules**

Fed. R. Civ. P. 8 ....................16, 23

Fed. R. Civ. P. 12(b)(6) ....................16, 17

**Other Authorities**

S.B. 707 ....................2, 16, 20, 21, 22, 23

*Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of
Com. Inst. for Legal Reform (Feb. 28, 2023). ....................11

## PRELIMINARY STATEMENT

The Court should recognize this case for what it is—an improper attempt to use litigation costs as a cudgel to coerce Condé Nast to settle thousands of cookie cutter, lawyer-generated claims that Plaintiffs' counsel tried to file at their preferred arbitration provider, the American Arbitration Association ("AAA"). Plaintiffs Tosin Balogun and Alexandra Mason purport to want to resolve their claims against Condé Nast in arbitration, and they admit that any claim they have against Condé Nast is subject to mandatory arbitration. But to date, Plaintiffs have neither moved to compel arbitration of their claims at AAA nor commenced arbitrations at the agreed-upon arbitration provider, National Arbitration and Mediation ("NAM"). Instead, they first opted to file a putative class action complaint seeking millions in money damages and asserting breach of contract and various other causes of action simply because Condé Nast would not arbitrate at AAA (all the while making no mention of the fact that AAA had not been Condé Nast's arbitration provider for months). Condé Nast moved to dismiss the complaint for multiple reasons, including that Plaintiffs failed to come close to satisfying the amount-in-controversy requirement for CAFA jurisdiction. Rather than respond to that motion, Plaintiffs filed a First Amended Complaint ("FAC") that changed nothing substantive other than add a claim under the federal Video Privacy Protection Act ("VPPA"), seemingly to try to "solve" their subject-matter jurisdiction problem. Plaintiffs' position—or at least their counsel's—appears to be that if they can't have arbitration at AAA, they will take a federal VPPA class action. They are entitled to neither.

First, this Court can and should compel arbitration of all Plaintiffs' claims at NAM because they fall within the scope of the arbitration agreement in Condé Nast's April 17, 2024 User Agreement ("UA"). Plaintiffs admit they entered into the earlier UA dated April 27, 2023,

and thus necessarily agreed to the provision therein permitting Condé Nast to modify the agreement. Plaintiff Balogun further manifested assent to arbitrate at NAM by signing into the Vogue website in September 2024 and agreeing to the updated UA designating NAM. Plaintiffs do not have the right to the arbitration provider of their choosing. Nor can they in one breath say they agreed to individually arbitrate so Condé Nast must as well, while in the other breath pursue one of their substantive claims as a class action in federal court. The Court should compel arbitration of their claims at NAM.

To the extent Plaintiffs' claims are not compelled to arbitration, they must be dismissed because the FAC does not plead facts stating a plausible claim. As with the initial Complaint, Plaintiffs' breach of contract claim fails because the facts Plaintiffs plead do not identify a specific agreement to arbitrate between the parties, a breach by Condé Nast, or any injury from Condé Nast's alleged unwillingness to arbitrate at AAA instead of NAM. Plaintiffs' NY GBL § 349 claim fails because Plaintiffs do not allege a cognizable injury under the statute. And Plaintiff Balogun's California S.B. 707 claim fails because the California Arbitration Act ("CAA") does not apply at all—Condé Nast's UA expressly states it is governed by the Federal Arbitration Act, not the CAA. Even if S.B. 707 did apply, however, violation of that provision is not an independent cause of action. Plaintiffs' newly added VPPA class action claim also fails because it is not properly pleaded in the alternative. Finally, any claims that are allowed to proceed cannot proceed as a class action.

## BACKGROUND

### A. Condé Nast and Its Arbitration Provision

Condé Nast publishes a variety of popular magazines, such as *Vogue*, *Vanity Fair*, and *Architectural Digest*. FAC ¶ 2. Condé Nast also offers public websites associated with those magazines. *Id.* Like many website operators, Condé Nast publicly posts and periodically

updates a terms of service that governs website visitors and their use of the websites. *See* FAC Ex. A (User Agreement dated April 27, 2023). Plaintiffs here originally purported to seek arbitration of several privacy claims that allegedly arose from their browsing of Condé Nast's public websites. FAC ¶¶ 5-6. Plaintiffs thus concede in the FAC that they assented to Condé Nast's 2023 UA and as a result entered into an agreement with Condé Nast to arbitrate their privacy claims. *Id.* ¶¶ 5, 22-23, 109, 119.

In its very first section, the UA contains a change provision informing website visitors that the agreement "may be modified from time to time, so check back often." *See* FAC Ex. A, at 3 (section titled "Introduction, Arbitration Notice & Class Action Waiver"). When there is an update, Condé Nast adjusts the "Last Updated" date at the top of the page. *See id.* at 2. For material changes, the UA provided, "If we make a material change to this User Agreement, we will also post on the Service a prominent notice that a change was made." *Id.* at 3. Either way, the UA advised that "[c]ontinued access, visitation and/or use of the Service by you, or continued receipt of a Product, will constitute your acceptance of any changes or revisions to the User Agreement." *Id.*

On April 16, 2024, Condé Nast updated the UA to change its arbitration provider from AAA to NAM. *See* Decl. of Matthew Hoffmeyer in Supp. of Mot. to Dismiss ("Hoffmeyer Decl.") Ex. 1 (UA with date of April 16, 2024) ("April 2024 UA").[1] Pursuant to the change

[1] The Court may fully consider the UA dated April 16, 2024 (and July 30, 2024) as part of deciding Condé Nast's motion to compel arbitration. *See infra* at 7-8. The Court may also do so in resolving Condé Nast's Rule 12(b)(6) motion because the FAC contains numerous references to Condé Nast's UA, and thus the agreement is integral to the complaint. *See, e.g.,* FAC ¶¶ 4, 31-37, 40, 41, 43; *see also, e.g.*, *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 233 n.2 (E.D.N.Y. 2021) (considering an agreement to license the mark on a motion to dismiss a trademark infringement claim because the license was "integral" to the complaint). Furthermore, the UAs are judicially noticeable because they are publicly available

provision, Condé Nast adjusted the "Last Updated" date. *Id.* Besides designating NAM as Condé Nast's arbitration provider, there were no other changes in the April 2024 terms. Hoffmeyer Decl. ¶ 5. Both the April 2023 and April 2024 terms stated they were governed by the FAA. *See* FAC Ex. A, at 22 ("The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. The laws of the United States, State of New York, without regard to any principles of conflict of laws, applies to any arbitration under this section."); Hoffmeyer Decl. Ex. 1, at 26 (same). Both the April 2023 and April 2024 terms, at all times, were accessible on Condé Nast's website. Hoffmeyer Decl. ¶ 7.

On April 17, 2024, ***after*** Condé Nast updated its terms to make NAM Condé Nast's arbitration provider, Plaintiffs' counsel sent Condé Nast a letter via USPS certified mail. FAC ¶ 45. In that letter, Plaintiffs' counsel threatened to file thousands of individual arbitrations against Condé Nast at AAA based on alleged violations of various state and federal privacy statutes. *See id.* The letter further threatened that if Claimants claims were not resolved within 30 days of the letter, Claimants would initiate arbitration before AAA. *See id.* By that point, however, AAA was no longer Condé Nast's arbitration provider.

On June 17, two months after Condé Nast changed its arbitration provider to NAM, Plaintiffs' counsel contacted AAA to try to open individual arbitrations against Condé Nast. *See* FAC Ex. B. One month later, on July 23, AAA responded to Plaintiffs' counsel confirming receipt of "a Mass Arbitration caseload filing of 25 individual Demands for Consumer

---

and there is no doubt about its authenticity. *See Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022) (considering website terms of service on motion to dismiss because it was publicly available). Courts in this District commonly take judicial notice of webpages archived on the Wayback Machine in particular. *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 165 n.14 (S.D.N.Y. 2023) (taking judicial notice of webpages accessed on the Wayback Machine and collecting similar cases).

Arbitration." *Id*. The AAA's letter, which Condé Nast did not receive at the time, requested that Condé Nast submit a copy of its "current or proposed" arbitration agreement for review for the AAA to begin case administration. *Id.* Critically, AAA limited that request to those "businesses that provide for AAA arbitration in a consumer contract." *Id.* In both June (when Plaintiffs' counsel filed the demands) and July (when AAA sent its letter), Condé Nast did not provide for AAA arbitration. Submitting Condé Nast's "current or proposed" consumer agreement to AAA would have meant submitting a contract containing no mention of AAA. On August 12, the AAA stated it was declining to administer the arbitrations. FAC Ex. C. At this point, nearly four months had passed since Condé Nast switched to NAM. Plaintiffs' counsel still did not file any arbitrations at NAM.

**B. The Original Complaint and Motion to Dismiss**

Rather than simply adjudicate their claims at NAM, on September 27, Plaintiffs filed the original complaint in this matter ("Original Complaint"). The Original Complaint asserted putative class action claims for breach of contract, violation of California S.B. 707, and NY GBL § 349, all based on Condé Nast's alleged failure to arbitrate Plaintiffs' claims at AAA. *See, e.g.*, Compl. ¶ 1. Notably, the Original Complaint made no mention of the UA's requirement to arbitrate at NAM or Plaintiffs' refusal to simply file at NAM. Nevertheless, the Original Complaint alleged, but pleaded no facts to support, that Plaintiffs were damaged because Condé Nast failed to arbitrate at AAA. *Id.* ¶¶ 25, 94-95, 121. Despite the lack of facts showing damages, the Original Complaint sought to invoke this Court's limited jurisdiction under CAFA by summarily stating that the aggregate amount in controversy exceeded $5 million, the number of members of the proposed classes exceeded 100, and many members of the proposed classes were citizens of different states than Condé Nast. *Id.* ¶ 24.

On December 9, 2024, Condé Nast moved to dismiss the Original Complaint. *See* ECF 13. Condé Nast first argued that the Court lacked subject-matter jurisdiction because the Original Complaint did not allege any actual damages and, in any case, the maximum aggregate statutory damages was not even $100,000, much less than $5 million in controversy required by CAFA. *Id.* at 7-9. Condé Nast further argued that even if the Court had subject-matter jurisdiction, the Original Complaint failed to state a claim for breach of contract, violation of GBL § 349, or violation of California S.B. 707.

### C. The Amended Complaint

Rather than oppose Condé Nast's motion to dismiss, on January 7, 2025, Plaintiffs filed the FAC. The FAC is largely identical to the Original Complaint. As with the Original Complaint, the FAC is premised on Condé Nast's alleged refusal to arbitrate Plaintiffs' and their counsel's other clients' claims at AAA. As such, the FAC admits repeatedly that Plaintiffs are required to arbitrate their claims against Condé Nast. *See* FAC ¶¶ 5, 22-23, 109, 119. And incredibly, the FAC still fails to disclose to the Court that Condé Nast changed its arbitration provider to NAM before Condé Nast even received a demand letter from Plaintiffs' counsel.

The only meaningful difference between the Original Complaint and the FAC is an additional, purported class action claim under the VPPA, presumably inserted as an attempt to get around Plaintiffs' inability to establish subject-matter jurisdiction otherwise. *See* FAC ¶ 25 (invoking federal question jurisdiction). Nowhere does the FAC explain how the same plaintiffs who repeatedly allege they agreed to arbitrate their claims individually can in good faith also commence a class action in federal court.

### D. Plaintiffs' Relationships with Condé Nast

Plaintiff Balogun alleges she purchased a print subscription to *Vogue* magazine and also signed up for Vogue Club, an online program that offers access to fashion news and information.

FAC ¶ 22. To support her VPPA claim, Plaintiff Balogun states in conclusory fashion that she "watched exclusive videos on *Vogue*'s website"—but does not plead any other detail about her alleged watching, such as what those videos were or when she viewed them. *Id.* Plaintiff Balogun admits unequivocally that "[s]he agreed to arbitrate her claims against Condé Nast." *See, e.g.*, *id.* Condé Nast's records further show that Plaintiff Balogun last logged into and accessed the Vogue website on September 18, 2024, more than 5 months after Condé Nast updated its UA to make NAM its arbitration provider. *See* Hoffmeyer Decl. ¶ 9. When signing in on that date, Plaintiff Balogun agreed to Condé Nast's updated UA. *Id.* ¶¶ 10-13.

Plaintiff Mason alleges she purchased print subscriptions to *Vogue* and *Bon Appetit*. FAC ¶ 23. She purchased those subscriptions from a third-party, and not from Condé Nast directly. Hoffmeyer Decl. ¶ 14. Like Plaintiff Balogun, Plaintiff Mason asserts she watched videos on the *Vogue* and *Bon Appetit* websites but does not identify what those videos were or when she watched them. FAC ¶ 23. Plaintiff Mason also alleges unequivocally that "she agreed to arbitrate her claims against Condé Nast." *Id.*

## ARGUMENT

### I. PLAINTIFFS MUST ARBITRATE THEIR CLAIMS AT NAM

Upon a motion by either party to an arbitration agreement, courts must compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA embodies the "liberal federal policy favoring arbitration" as another way to resolve disputes and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted). Accordingly, the FAA "requires courts to 'rigorously enforce agreements to arbitrate' according to their terms." *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *accord Concepcion*, 563 U.S. at 339.

Courts faced with a motion to compel arbitration must engage in a two-step inquiry following a summary judgment standard. The first step is determining whether the plaintiff validly assented to the arbitration agreement. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) ("This question is determined by state contract law.").[2] The second step is determining "whether the dispute falls within the scope of the arbitration agreement." *Id.* at 74. If this second step is not delegated to the arbitrator, Courts resolve any "doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### A. Plaintiffs Assented to Condé Nast's Arbitration Agreement Which Requires Plaintiffs to Arbitrate at NAM

Plaintiffs Mason and Balogun agreed to arbitrate their claims against Condé Nast, and they agreed to do so at NAM. As an initial matter, Plaintiffs undisputedly agreed to resolve all claims against Condé Nast via arbitration; they allege this repeatedly throughout the FAC. *See, e.g.*, FAC ¶¶ 22-23 (pleading each Plaintiff "agreed to arbitrate her claims against Condé Nast"). Plaintiffs' statements are judicial admissions which bind them throughout the litigation. *See, e.g.*, *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (recognizing "the allegations in the Second Amended Complaint are 'judicial admission[s]' by which [the plaintiff] was 'bound throughout the course of the proceeding'"). Enforcing this principle is of particular importance when it comes to arbitration. Plaintiffs "cannot rely on the contract when it works to their advantage by enforcing the obligations of the . . . defendants, but then repudiate the contract and its arbitration clause when

[2] This agreement is governed by New York state contract law, given the filing of this case in the Southern District of New York and the UA itself which calls for the application of New York law. FAC Ex. A, at 22-23.

they believe it works against them." *Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*, 1999 WL 637236, at *7 (S.D.N.Y. Aug. 20, 1999). "[P]laintiffs cannot have it both ways." *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000). Here, where Plaintiffs seek the benefit of Condé Nast's arbitration clause to assert their non-VPPA claims, they cannot simultaneously repudiate the parts of that clause they do not like.

By admitting they agreed to the 2023 UA, Plaintiffs necessarily also agreed that Condé Nast could update the arbitration agreement on a forward-looking basis—and would do so by posting non-material changes to the same webpage. New York courts have long recognized that parties may confer on one side the power to make unilateral changes to an agreement to arbitrate. This is so because "[a]rbitration is essentially a creature of contract in which the parties themselves charter a private tribunal for the resolution of their disputes and are free to enlarge, restrict, modify, amend or terminate their agreement to arbitrate." *Instituto De Resseguros Do Brasil v. First State Ins. Co.*, 221 A.D.2d 266, 266 (1st Dep't 1995). For this reason, district courts in this Circuit routinely recognize that unilateral amendments are valid, so long as they fall in the scope of changes permitted by the modification clause. *See Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 373-74 (S.D.N.Y. 2010) (citing cases concluding that "unilateral amendments allowed so long as the 'universe of terms which could be altered or affected' is contemplated in the change-in-terms clause").

In *TradeComet.com LLC v. Google, Inc.*, for example, a court in the Southern District of New York approved an amended terms of use in light of a modification clause that stated, "Google may modify the [AdWords] Program or these Terms at any time without liability and your use of the Program after notice that Terms have changed indicates acceptance of the Terms." 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011),

*and aff'd in part*, 435 F. App'x 31 (2d Cir. 2011). "[T]he material issue [is] what types of terms the contract allowed the [business] to change," a question "of basic contract interpretation." *Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189, 194, 196 (E.D.N.Y. 2004); *id.* at 198 (declining to frame the issue as one of conscionability, but rather whether "the terms discussed in the change-in-terms clause . . . supply the universe of terms which could be altered or affected pursuant to the clause").

So too here. Plaintiffs admit they contractually agreed to the arbitration agreement in the 2023 UA, which authorized Condé Nast to make updates to the UA, and notify users by updating the webpage and adjusting the "Last Updated" date. FAC Ex. A, at 3. In accordance with this procedure, Condé Nast on April 16, 2024 updated the UA, published the new version, and changed the "Last Updated" date. Hoffmeyer Decl. ¶ 4; Hoffmeyer Decl. Ex. 1. The April 2024 UA altered the 2023 UA in one aspect—changing the arbitration provider from AAA to NAM. Hoffmeyer Decl. ¶ 5. This change fell within the scope of the modification provision contained in the 2023 UA.[3]

Condé Nast's change from AAA to NAM also did not defy the parties' expectations. An alteration is material such that it may require express agreement if it "would result in surprise or hardship if incorporated without express awareness by the other party." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 393 (E.D.N.Y. 2015). Change in arbitration provider is not considered a material alteration. *See DoorDash, Inc. v. Green*, 2021 WL 5193970, at *2 (Utah Dist. Ct. Oct.

[3] Where courts have declined to enforce a unilateral modification, it was because the amended agreement introduced a completely new type of term—such as an arbitration clause where none existed before. *See, e.g.*, *Stone*, 341 F. Supp. 2d at 197-98; *cf. Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 492 (S.D.N.Y. 2022) (denying motion to compel arbitration because the original agreement did not even contain unilateral modification). That is plainly not the case here. Previous versions of Condé Nast's UA, including the 2023 UA to which Plaintiffs admit they agreed, contained both an arbitration provision and a unilateral change provision.

14, 2021) ("[T]here was no unfair surprise or prejudice to Respondent on account of DoorDash simply changing the arbitration provider from JAMS to ADR Services, which was not a material change to the agreement requiring notice."); *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (concluding that an arbitration agreement permitting unilateral modifications "limited to non-material changes to the handbook" is enforceable).

The FAC does not (and cannot) allege the mere change from AAA to NAM was material to Plaintiffs. The FAC does not, for example, plead the providers' rules differ in any material respects, much less in ways that would surprise or cause hardship to Plaintiffs. Indeed, the FAC does not even mention NAM at all—likely because Plaintiffs seek to sidestep the fact that Condé Nast changed to NAM months before Plaintiffs' counsel filed at AAA. Of course, the real reason Plaintiffs (or at least their counsel) want to arbitrate at AAA and not NAM is because the AAA fee schedule is preferred by plaintiffs' firms threatening business with mass arbitrations to extort settlements.[4] But that preference does not amount to surprise or hardship for the Plaintiffs. In any case, even where courts were asked to assess NAM's rules and fee schedules, courts consistently hold that NAM's procedures and fees are enforceable. *See, e.g.*, *Taylor v. TA Operating, LLC*, 2023 WL 171359, at *5-7 (E.D. Cal. Jan. 12, 2023) (finding NAM's rules and procedures not unconscionable); *Lewis v. Sterling Jewelers Inc.*, 2019 WL 856852, at *4 (C.D. Cal. Feb. 11, 2019) (finding NAM's fee schedule not unconscionable); *De La Vega v. Sterling Jewelers Inc.*, 2017 WL 10605190, at *7 (C.D. Cal. July 7, 2017) (same). For all these reasons, Mason and Balogun agreed to and are bound by the April 2024 UA requiring that disputes be arbitrated at NAM.

---

[4] *Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of Com. Inst. for Legal Reform (Feb. 28, 2023), https://instituteforlegalreform.com/research/mass-arbitration-shakedown-coercing-unjustified-settlements/.

Moreover, at least Plaintiff Balogun additionally manifested assent to Condé Nast's updated UA. The Second Circuit instructs that "a party is under inquiry notice of the terms of an agreement if the reasonably prudent user would have been on notice of the terms and the user unambiguously manifested assent." *Picha v. Gemini Tr. Co.*, 2024 WL 967182, at *8 (S.D.N.Y. Mar. 5, 2024) (citing *Edmundson v. Klarna, Inc.*, 85 F. 4th 695, 703 (2d Cir. 2023)). A user need not receive actual notice—or explicitly say "I agree" to the contractual terms—to be bound by them. *Edmundson*, 85 F. 4th at 704. Rather, the court evaluates the context of online contracts, including: "(1) whether the interface clearly warned the user that taking a specific action would constitute assent to certain terms . . . ; (2) whether notice of the contractual terms was presented to the consumer in a location on the interface and at time when the consumer would expect to receive such terms . . . ; and (3) the course of dealing between the parties, including whether the contract terms were conspicuously presented to the consumer at each use of the offeror's service and the consumer's conduct in response to the repeated presentation of conspicuous terms." *Id.* at 704-05 (internal citations and quotation marks omitted).

Here, the reasonably prudent user in Plaintiff Balogun's position would be on notice of the updated UA. Plaintiff Balogun visited the Vogue website and signed into her account using her email on September 18, 2024, well after Condé Nast changed the provider to NAM. Hoffmeyer Decl. ¶ 9. The sign in screen stated clearly and proximately to the email input point: "By continuing, including through our platform partners, you agree to our User Agreement (including class action waiver and arbitration provisions) and acknowledge our Privacy Policy." *Id.* ¶ 10. Balogun then entered her email address and clicked "Continue With Email." *Id.* See screenshots of this process, below.




*Id.* Each underlined word linked directly to Condé Nast's terms, including the UA and the class action waiver and arbitration section within the UA. *Id.* This notice, moreover, appeared directly above the email address field and the "Continue" buttons. The overall interface was uncluttered, and users did not have to scroll or navigate to another page to find the notice.

Condé Nast's notice and presentation plainly provided notice of the updated UA to Plaintiff Balogun.[5] Indeed, Condé Nast's notice was so conspicuous that it would bind Plaintiff Balogun even if she had never agreed to the unilateral change provision in the 2023 UA and its unilateral change provision (which she concedes she agreed to). A court in the Southern District of New York compelled arbitration in a similar case that involved a modified version of the website terms and arbitration agreement. *Picha*, 2024 WL 967182. In *Picha*, the court concluded the plaintiffs were on inquiry notice of the amendments because they had signed in

---

[5] By September 18, 2024, Condé Nast had further updated the UA but the arbitration provider remained NAM. Hoffmeyer Decl. Ex. 2, at 26.

via a screen that clearly stated, "[b]y clicking 'Sign In' below, I agree to Gemini's USER AGREEMENT and Privacy Policy." *Id.* at *9. The same holds when it comes to assent to an arbitration agreement for the first time. *See Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (valid agreement when a user clicked a "Shop Now" button and was informed that by doing so and entering an email address, "you agree to the Terms of Membership for all Gilt Group sites"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-35 (S.D.N.Y. 2012) (valid assent manifested by clicking a "Sign Up" button located above a notice that read "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *5 (S.D.N.Y. Nov. 20, 2017) (valid assent manifested by clicking "submit order" button located above a notice that read "[b]y making this purchase you are agreeing to our Terms of Use"), *R&R adopted as mod.*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).

### B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement

Plaintiffs' claims also unquestionably fall within the scope of the parties' arbitration agreement, mandating that this dispute be resolved in arbitration. Where there is no delegation clause and the court itself determines the scope of the agreement, there is a presumption of arbitrability. The FAA requires courts to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Courts in the Second Circuit recognize that broadly worded arbitration clauses maintain a presumption of arbitrability. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001); *see also Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019) (broadly scoping in "ALL DISPUTES AND CLAIMS BETWEEN US"); *Feld v. Postmates, Inc.*, 442 F.

Supp. 3d 825, 833 (S.D.N.Y. 2020) (broadly scoping in all claims "arising out of or relating to these Terms or . . . use of the PLATFORM").

Here, the parties' arbitration clause is broadly worded to cover all Plaintiffs' claims in the FAC. The UA scopes the arbitration provision to include any claim relating to Plaintiffs' relationship with Condé Nast or arising out of the UA: "THIS SECTION SHOULD BE BROADLY CONSTRUED TO COVER ANY CLAIM RELATING TO ANY ASPECT OF YOUR RELATIONSHIP WITH US, INCLUDING, BUT NOT LIMITED TO, ANY CLAIM ARISING OUT OF OR RELATED TO THE AGREEMENT." Hoffmeyer Decl. Ex. 1, at 25. "Claim" is broadly defined to "mean[] any and all claims, disputes, demands, proceedings, cause of action, judgments, damages, liabilities, losses, costs or expense (including, but not limited to reasonable attorneys' fees) of any kind and nature." *Id.* at 29. Moreover, the UA makes clear that the arbitration clause applies to claims "of any kind and nature . . . whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory." *Id.* at 29-30.

Here, Plaintiffs claim that Condé Nast violated the VPPA because it used the Meta pixel on its websites to allegedly disclose Plaintiffs' activities to Meta. To make out this claim, the FAC asserts various allegations about Condé Nast's websites, their setup, and their functionality. FAC ¶¶ 69-82 (referencing Condé Nast's websites more than 20 times). Plaintiffs' VPPA claim relates to and arises out of Condé Nast's websites and thus falls squarely within the UA's agreement to arbitrate at NAM. Similarly, Plaintiffs' breach of contract, GBL § 349, and S.B. 707 claims arise from allegations that Condé Nast contravened the UA and dispute resolution provisions contained therein. *See* FAC ¶¶ 105, 122, 129 (alleging, for example, that Condé Nast

failed to take action "as required by its Terms"). Such disputes are plainly "claim[s] arising out of or related to the agreement."[6] Hoffmeyer Decl. Ex. 1, at 25; FAC Ex. A, at 21. Courts in this District have compelled arbitration of VPPA and other consumer claims in applying analogous arbitration provisions. *See, e.g.*, *Graham v. Bloomberg L.P.*, 2023 WL 6037974, at *3 (S.D.N.Y. Sept. 15, 2023) (Broderick, J.) (compelling arbitration of VPPA claim); *Feld*, 442 F. Supp. 3d at 833 (compelling arbitration of deceptive acts and practices claim because "'[e]xpansive language' . . . renders Postmates' arbitration clause broad, which creates a presumption of arbitrability").

## II. IN THE ALTERNATIVE, THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To the extent the Court does not compel Plaintiffs' claims to individual arbitration, it should dismiss them. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. The rule that a court accept as true allegations in a complaint is "inapplicable to legal conclusions," *id.*, and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679

[6] S.B. 707 expressly authorizes a consumer to seek judicial intervention under California Code of Civil Procedure § 1281.97, but the FAC does not seek relief under the provisions enumerated therein. *See* § 1281.97 (permitting a consumer only to compel arbitration or pursue a claim in court). Rather, Plaintiff Balogun presses her S.B. 707 claim as a class claim. The CAA does not require or permit that such class action claims be lodged in court and, for this reason, Count II should also be arbitrated alongside the other claims.

(alteration adopted) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task" that requires a court "to draw on its judicial experience and common sense." *Id.* "In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (alteration adopted). Applying these standards, none of Plaintiffs' claims can survive dismissal.

### A. Plaintiffs Do Not State a Claim Under GBL § 349

Even after amendment, Plaintiffs still fail to state a GBL § 349 claim. To prevail, a plaintiff must allege (1) the challenged act or practice was consumer oriented; (2) it was misleading in a material way; and (3) they suffered injury as a result of the deceptive act. *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). In addition, although reliance is not an element under § 349, "[t]he causation element is essential: The plaintiff must show that the defendant's material deceptive act caused the injury." *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (cleaned up).

GBL § 349 "does not create a strict liability scheme in which consumers may pursue private remedies simply because a defendant sent deceptions into the marketplace." *Wright v. Publishers Clearing House, Inc.,* 372 F. Supp. 3d 61, 67 (E.D.N.Y. 2019). Rather, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). Here, Plaintiffs do not allege they paid for access to Condé Nast's website (which gives rise to their underlying claims), let alone that they would have paid less for that access or not subscribed at all had they known that Condé Nast would not arbitrate Plaintiffs' claims at AAA as Plaintiffs now desire. Nor is there any plausible allegation that Condé Nast acted

deceptively—to the contrary, its updates to and posting of the UA was clear and straightforward. *See* FAC Ex. A, at 3 (Condé Nast explaining in 2023 UA that it would periodically update the terms, so "check back often"). This is fatal to the GBL § 349 claim.

Plaintiffs offer only the bare assertion that they were "injured by [Condé Nast's] deceptive acts or practices of failing to register its arbitration clause with the AAA." FAC ¶ 144. New York law is clear, however, that a plaintiff asserting a GBL § 349 claim may not "set[] forth deception as both act and injury," such as by relying solely on an allegation they bought "a product that they would not have purchased, absent a manufacturer's deceptive commercial practices." *Small v. Lorillard Tobacco Co*., 94 N.Y.2d 43, 56 (1999). For this reason, courts routinely reject GBL § 349 claims where, like here, the only injury alleged is the supposed deception. *See, e.g., Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (dismissing complaint because "Plaintiff's claim sets forth deception as both act and injury and, thus, contains no manifestation of either pecuniary or actual harm" (cleaned up)); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78 (1st Dep't 2004) (dismissing complaint because the plaintiffs "impermissibly set up the deception as both act and injury, a theory specifically rejected by our courts").[7]

Plaintiffs also do not allege that Condé Nast's purported deceptive acts ***caused*** their injury as required to allege a violation of GBL § 349. To plead causation, a plaintiff must allege facts showing he or she was personally misled or deceived. *See, e.g., Fero v. Excellus Health*

---

[7] Plaintiff Balogun's GBL § 349 claim fails for the additional reason that she is a resident of California and does not allege she received any allegedly deceptive information in New York. New York Court of Appeals precedent "forecloses plaintiffs' reliance on allegations that deceptive terms and conditions were published on a website controlled from New York, when there is no further allegation of plaintiffs' receipt of this information in New York." *See Kaufman v. Sirius XM Radio, Inc.,* 474 F. App'x. 5, 8 (2d Cir. 2012).

*Plan, Inc.*, 502 F. Supp. 3d 724, 739 (W.D.N.Y. 2020) ("[C]ase law consistently holds that 'in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived.'"). Here, Plaintiffs do not allege they relied on Condé Nast's arbitration provision (let alone its naming of AAA as the arbitration provider) before transacting with Condé Nast. This further forecloses their GBL § 349 claim. *See Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 360 (S.D.N.Y. 2022) (complaint did not plead § 349 claim where it failed to allege plaintiff "made the purchases 'as a result' of the misrepresentations."); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (dismissing GBL § 349 claim where "[p]laintiffs allege that they checked Defendant's website, but . . . d[id] not allege that they viewed [the representation] prior to purchasing [the product]")

**B. Plaintiffs Do Not State a Breach of Contract Claim**

Plaintiffs' breach of contract claim also still fails. The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). Plaintiffs fail to adequately allege the third and fourth of these elements.

The express language of the 2023 UA refutes the notion that Condé Nast committed any breach. *See Miller v Kornella Corp.*, 229 N.Y.S.2d 675, 676 (Sup. Ct. 1962) (noting that copy of contract attached to the complaint prevails over complaint's allegations purporting to describe contract). First, as discussed above, Condé Nast modified its UA to make NAM its arbitration provider in April 2024—two months before Plaintiffs filed their arbitration demands with AAA. *See supra* at 3-4; FAC ¶ 49 (identifying June 17, 2024 as the date Plaintiffs' counsel filed their demands with AAA). Plaintiffs do not and cannot allege that Condé Nast refused to arbitrate Plaintiffs' claims at NAM. Second, the arbitration provision within the 2023 UA states that "issues relating to the scope, application, and enforceability of this arbitration provision are for

the court to decide." FAC Ex. A, at 22. Thus, if Plaintiffs wanted to have the prior UA apply notwithstanding the new UA that went into place two months before they sought arbitration, the place to raise that issue was in court, not by filing arbitration at AAA.

Finally, Plaintiffs fail to adequately allege breach of contract damages. A breach of contract claim must be dismissed if the plaintiff fails to "allege any basis for an award of damages, or to plead facts from which damages attributable to defendants' conduct might be reasonably inferred." *Arcidiacono v. Maizes & Maizes*, *LLP*, 8 A.D.3d 119, 120 (1st Dep't 2004) (internal citations omitted). That is the case here. Plaintiffs plead no facts showing they were damaged by Condé Nast's alleged failure to arbitrate at AAA as opposed to NAM. That is because they were not—especially because they had the option to seek to compel arbitration at AAA if they wanted. *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) ("[E]nforcement of an agreement to arbitrate under the FAA does not appear to include any mechanism beyond those geared toward returning the parties to arbitration, thus appearing not to authorize compensation by a court to parties in the form of damages prior to issuance of an arbitral award."); *Cunningham v. Prudential Prop. & Cas. Ins. Co.*, 489 A.2d 875, 878 n.1 (Pa. Super. Ct. 1985) ("It is difficult to comprehend in what manner a party can be damaged by another's failure to arbitrate when the former has available to him the means by which to compel arbitration."). The mere fact that Plaintiffs' ***lawyers*** might prefer to arbitrate Plaintiffs' claims at AAA does not change that Plaintiffs have not alleged any injury from Condé Nast's alleged unwillingness to arbitrate there as opposed to NAM.

### C. Plaintiff Balogun Does Not State a Claim Under California S.B. 707

Plaintiff Balogun's S.B. 707 claim must be dismissed because it is procedurally improper for multiple independent reasons, none of which the FAC addressed. First, S.B. 707 does not apply here at all. The FAC alleges that Condé Nast violated "SB 707 § 1281.97," a provision of

the CAA. FAC ¶ 120; *see Hernandez v. Sohnen Enters., Inc.,* 102 Cal. App. 5th 222, 233 (2024). Condé Nast's UA, however, expressly states that the FAA, not the CAA, governs interpretation and enforcement of the UA's arbitration provision. *See* Hoffmeyer Decl. Ex. 1, at 26; FAC Ex. A, at 22. As such, the CAA does not apply. *See Hernandez*, 102 Cal. App 5th at 242 ("The parties selected the procedural provisions of the FAA and the Federal Rules of Civil Procedure, and therefore, the procedures of the CAA, including section 1281.97, do not apply. The order based on section 1281.97 must be reversed."); *Rahaman v. Citibank, N.A.,* 2023 WL 6851739, at *2 (C.D. Cal. Aug. 22, 2023) (concluding that the CAA does not apply to a federal court action where the arbitration agreement stated it was governed by the FAA and the plaintiff "has not persuasively demonstrated why the CAA should apply rules of procedure here").

Second, even if S.B. 707 applied here, the claim must be dismissed because violation of that provision does not give rise to an independent cause of action. Section 1281.97(b) provides two options for a consumer asserting the drafter of a consumer arbitration provision failed to pay fees needed to commence an arbitration: (1) withdraw the claim from arbitration and litigate the underlying claim in a court of appropriate jurisdiction or (2) move to compel arbitration. Cal. Civ. Proc. § 1281.97(b)(1)-(2). This action does neither. Plaintiffs do not, for example, now seek to litigate before this Court the claims they originally filed in arbitration. *See* FAC ¶ 6. Nor do they file a motion to compel Condé Nast to arbitrate.

Instead, Plaintiff Balogun asserts a class claim for "Relief and Sanctions Under California S.B. 707," and seeks as a remedy an order requiring Condé Nast "to register its clause with the AAA and otherwise comply with the AAA's rules, and to compel arbitration in which Defendant shall pay reasonable attorney's fees and costs related to the arbitration." *Id.* ¶ 123. No part of that is proper. S.B. 707 does not create an independent cause of action. In general, a

plaintiff may allege a statutory cause of action only if the language of the statute or its legislative history demonstrates the legislature intended to create such a right. *Vikco Ins. Servs., Inc. v. Ohio Indem. Co*., 70 Cal. App. 4th 55, 62–63 (1999). Here, while the language of S.B. 707 demonstrates the California legislature intended to provide consumers with certain ***remedies*** for a failure to pay arbitration fees (where the CAA applies), it does not "evidence an intent to create a separate cause of action for a violation of the statute." *Berry v. Frazier*, 90 Cal. App. 5th 1258, 1275 (2023). This is consistent with similar remedial statutes. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2024 WL 1994205, at *19 (S.D.N.Y. May 6, 2024) (Broderick, J.) ("[N]either recoupment nor setoff are causes of action, and therefore to be asserted must be coupled with an independent cause of action."); *Vecchia v. Town of North Hempstead*, 927 F. Supp. 579, 580–81 (E.D.N.Y. 1996) (holding that statute authorizing award of attorney fees to prevailing parties in certain civil rights actions does not grant independent cause of action); *Barkett v. Sentosa Props. LLC,* 2015 WL 502319, at *18 (E.D. Cal. Feb. 5, 2015) (noting that "declaratory relief is not an independent cause of action, but a remedy"); *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1047, 1072 (D. Or. 2015) (concluding that rescission may not be asserted as a separate cause of action). Put another way, even if Plaintiff Balogun could have obtained certain relief under S.B. 707 (if the CAA applied), she cannot maintain a cause of action for violation of S.B. 707.

Even if there was an independent cause of action under S.B. 707, the FAC does not state a claim under the statute. S.B. 707 is triggered if the drafting party to an arbitration agreement fails within 30 days to pay fees or costs required to advance the arbitration. *See* Cal. Civ. Proc. §§ 1281.97(a)-(b) (presenting as a condition for relief that the drafting party be "in default" in terms of payment). Nowhere do Plaintiffs here allege that Condé Nast failed to pay arbitration

fees, or that AAA even issued an invoice to Condé Nast. *See* FAC ¶¶ 118-26. This claim does not meet the statute's basic elements. Moreover, the statute does not authorize the remedy Plaintiff Balogun seeks. Under S.B. 707, the consumer can seek to compel an arbitration "in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." Cal. Civ. Proc. § 1281.97(b)(2). In the alternative, the consumer can proceed with his or her underlying claim in court and obtain reasonable expenses ***already incurred*** as a result of the alleged breach of the arbitration agreement (as well as potentially certain "evidence," "terminating" or "contempt" sanctions). *See* Cal. Civ. Proc. §§ 1281.97(d); 1281.99. But Plaintiffs seek neither of those things.

### D. Plaintiffs' VPPA Class Action Claim Also Must Be Dismissed

Plaintiffs' newly added VPPA class action claim also fails because it is not a properly pleaded alternative claim. Federal Rule of Civil Procedure 8(d) allows a complaint to incorporate alternative statements of a claim, as well as separate claims "regardless of consistency." *See* Fed. R. Civ. P. 8(d)(2)-(3). Thus, an alternative claim "which standing independently would be sufficient to state a claim is not rendered insufficient by other alternatives which as pleaded may be insufficient." *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001). But Rule 8 does not, however, "grant[] plaintiffs license to plead inconsistent *assertions of facts* within the allegations that serve as the factual predicates for an independent unitary claim." *Id.* at 407 (distinguishing "[i]nternally conflicting factual assertions that constitute integral components of a claim" from "a permissible alternative statement embodying a theory of a whole sufficient claim").

Pleading inconsistent factual assertions is precisely what Plaintiffs do here. They repeatedly allege that they entered an agreement to arbitrate, *see* FAC ¶¶ 5, 22-23, 109, 119, while also taking the position (by asserting their VPPA claim as a standalone claim in court) that

they did not enter an agreement to arbitrate, *see id.* ¶¶ 147-57. This is not proper. Plaintiffs can allege they entered into an arbitration agreement or they didn't, but they may not "have [their] cake and eat it too." *XL Specialty Ins. Co. v. Otto Naumann, Ltd.*, 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015); *see also Carson Optical Inc. v. eBay Inc.,* 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."). The VPPA claim should be dismissed.

### E. The Court Should Dismiss Plaintiffs' Class Allegations Because They Consented to a Class Action Waiver

To the extent the Court does not compel to arbitration or dismiss Plaintiffs' claims, it should at least dismiss the class allegations because Plaintiffs concede they agreed to a class action waiver. It is well-established that parties can agree to class action waivers. *Concepcion,* 563 U.S. at 352. As such, courts within the Second Circuit routinely recognize and enforce class action waivers, including in online user agreements. *See Vasell v. SeatGeek, Inc.,* 2025 WL 240912, at *10 (E.D.N.Y. Jan. 17, 2025) ("Because the TOU is enforceable, the Arbitration Plaintiffs may not bring this action on behalf of a putative class."); *see also Carovillano v. Sirius XM Radio Inc.,* 2024 WL 3460040, at *8 (S.D.N.Y. July 18, 2024) ("Having found that plaintiffs agreed to the Customer Agreement, the Court finds that its class action waiver bars plaintiffs from pursuing their claims on a class-wide basis."); *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020) (summary order) ("[A] contractual proscription against class actions is neither unconscionable nor violative of public policy.").

Here, both the 2023 UA and April 2024 UA contained the same class action waiver provision. That provision states unequivocally:

> BY ENTERING INTO THIS AGREEMENT YOU WAIVE YOUR RIGHT TO PARTICIPATE IN OR BRING A CLASS ACTION IN COURT OR A CLASS

> ARBITRATION. ALL PARTIES MUST BE INDIVIDUALLY NAMED. TO THE FULL EXTENT PERMITTED BY LAW, THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED IN COURT ON A CLASS ACTION OR CONSOLIDATED BASIS ON BEHALF OF OTHER USERS, SUBSCRIBERS, REGISTRANTS OR OTHER PERSONS SIMILARLY SITUATED, OR BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL).

*See* FAC Ex A, at 23. Plaintiffs do not dispute that they agreed to this class action waiver. To the contrary, they each acknowledge they did. *See* FAC ¶¶ 22, 23. Having done so, they cannot simply ignore that provision and attempt to bring a class action when they agreed not to do so. *See Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793, at *5 (S.D.N.Y. Mar. 5, 2004) (rejecting attempt by party to "pick and choose which contract terms it wants enforced"); *see also In re First Am. Fin. Corp*., 2020 WL 7051087, at *2 (C.D. Cal. Aug. 11, 2020) ("Plaintiffs expressly acknowledge the existence of binding contracts as a premise of their claims. They cannot pick and choose what they want to enforce from those contracts."). Thus, even if this action is allowed to continue in this Court, it should not be as a class action.

## CONCLUSION

The Court should compel arbitration of Plaintiffs' claims at NAM or, in the alternative, dismiss the matter for failure to state a claim.

Dated: February 4, 2025

Respectfully submitted,

By: */s/ Jeffrey Landis*

Jeffrey Landis
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
jeff@zwillgen.com

Sheri Pan
ZWILLGEN LAW LLP
369 Pine Street, Suite 506

San Francisco, CA 94104
Telephone: (415) 590-2335
sheri@zwillgen.com

*Counsel for Defendant*
*Advance Magazine Publishers, Inc.*

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT**

This document complies with the word-count limitation of Local Rule 7.1(c) because, excluding the parts of the document that are exempted, this document contains 8,365 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

*/s/ Jeffrey Landis*
Jeffrey Landis