# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOSIN BALOGUN and ALEXANDRA MASON, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>ADVANCE MAGAZINE PUBLISHERS INC. d/b/a CONDÉ NAST,<br><br>              Defendant. | Case No. 1:24-cv-07326-VSB |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION TO COMPEL ARBITRATION OR DISMISS

### ORAL ARGUMENT REQUESTED

**Table of Contents**

Preliminary Statement ...........................................................................................1

Background...............................................................................................................3

Legal Standards .......................................................................................................6

Argument .................................................................................................................7

    I.      The Court Should Deny Defendant's Motion to Compel Arbitration Under the Updated Terms ...............................................................................................7

          A.     Plaintiffs Did Not Agree to Updated Terms .....................................7

               1.     Defendant Does Not Show Notice and Assent as to Plaintiff Mason 7

               2.     Defendant Does Not Show Notice and Assent as to Plaintiff Balogun ............................................................................................8

          B.     The 2023 Terms Did Not Authorize Defendant's Unilateral Modifications.10

          C.     The 2024 Terms' Arbitration Clause is Illusory and Unconscionable ...........13

               1.     Defendant Did Not Provide Notice....................................13

               2.     The Updated Terms are Unconscionable ...........................15

    II.     Plaintiffs State Their Breach of Contract Claims, and as a Result, Defendant Cannot Enforce the 2023 Terms' Class Action Waiver ................................................18

    III.    Plaintiffs State Their GBL § 349 Claims ...........................................21

    IV.    Plaintiffs Permissibly Plead Their VPPA Claim in the Alternative ............................23

Conclusion ..............................................................................................................25

# Table of Authorities

## **Cases**

*Aldana v. GameStop, Inc.,*
  2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .........................................................................25

*Anwar v. Fairfield Greenwich Ltd.,*
  742 F. Supp. 2d 367 (S.D.N.Y. 2010)..................................................................................12

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Zaro Bake Shop, Inc.,*
  2021 WL 2350094 (S.D.N.Y. June 8, 2021) ........................................................................21

*Barron v. Helbiz Inc.,*
  2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023) .......................................................................22

*Bassett v. Elec. Arts, Inc.,*
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) .............................................................................. 13, 15

*Beltran v. AuPairCare, Inc.,*
  907 F.3d 1240 (10th Cir. 2018) ...........................................................................................16

*Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.,*
  467 N.Y.S.2d 471 (N.Y. App. Term 1983).........................................................................22

*Brooks v. WarnerMedia Direct, LLC,*
  2024 WL 3330305 (S.D.N.Y. July 8, 2024) ................................................................ 13, 18

*Brown v. Dillard's, Inc.,*
  430 F.3d 1004 (9th Cir. 2005)..............................................................................................19

*Camelot SI, LLC v. ThreeSixty Brands Grp. LLC,*
  632 F. Supp. 3d 471 (S.D.N.Y. 2022)..................................................................................19

*Carson Optical Inc. v. eBay Inc.,*
  202 F. Supp. 3d 247 (E.D.N.Y. 2016)..................................................................................24

*Cruz v. FXDirectDealer, LLC,*
  720 F.3d 115 (2d Cir. 2013) ......................................................................................... 21, 22

*Flores v. Nat'l Football League,*
  2023 WL 4744191 (S.D.N.Y. July 25, 2023) ......................................................................14

*Floss v. Ryan's Fam. Steak Houses, Inc.,*
  211 F.3d 306 (6th Cir. 2000)................................................................................................14

*Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.,*
  1999 WL 637236 (S.D.N.Y. Aug 20, 1999) ................................................................. 12, 21

*Galeana v. Mahasan Inc.,*
  2019 WL 3024588 (S.D.N.Y. July 11, 2019) .................................................................. 6, 9

*Gibson v. Bank of Am., N.A.,*
  2017 WL 11685868 (E.D.N.Y. July 14, 2017) ...................................................................21

*Gomez v. MLB Enterprises, Corp.,*
  2018 WL 3019102 (S.D.N.Y. June 5, 2018) .....................................................................21

*Heckman v. Live Nation Ent., Inc.,*
  120 F.4th 670 (9th Cir. 2024) .................................................................................. 15, 18

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.,*
  309 F. Supp. 3d 100 (S.D.N.Y. 2018)............................................................................ 18, 19

*In re Gen. Motors LLC Ignition Switch Litig.,*
  339 F. Supp. 3d 262 (S.D.N.Y. 2018)..............................................................................22

*In re Lavigne,*
  114 F.3d 379 (2d Cir. 1997) ..........................................................................................19

*In re Livent, Inc. Noteholders Sec. Litig.,*
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)..............................................................................24

*In re Sling Media Slingbox Advert. Litig.,*
  202 F. Supp. 3d 352 (S.D.N.Y. 2016)..............................................................................22

*Instituto De Resseguros Do Brasil v. First State Ins. Co.,*
  221 A.D.2d 266 (1st Dep't 1995)...................................................................................12

*Kumaran v. Nat'l Future Ass'n,*
  2024 WL 2330655 (S.D.N.Y. May 22, 2024) ............................................................... 7, 25

*Lamoureux v. Trustco Bank,*
  592 F. Supp. 3d 14 (N.D.N.Y. 2022) ........................................................................ 21, 22

*Lee v. Springer Nature America, Inc.,*
  24-cv-4493-LJL (S.D.N.Y. Mar. 4, 2025)........................................................................25

*Lorinfosse v. Lowe's Home Centers, LLP.,*
  2024 WL 3732436 (E.D. Va. Aug. 8, 2024) .....................................................................14

*Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie,*
  784 F.3d 78 (2d Cir. 2015) ............................................................................................19

*Mackenzie v. Waypointe Partners Mgmt. LLC,*
  2025 WL 388296 (S.D.N.Y. Feb. 4, 2025)..........................................................................6

*Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.,*
  2004 WL 421793 (S.D.N.Y. Mar. 5, 2004) ......................................................................20

*Meyer v. Uber Techs., Inc.,*
  868 F.3d 66 (2d Cir. 2017) ...........................................................................................7, 8

*Micheli & Shel, LLC v. Grubhub Inc.,*
  588 F. Supp. 3d 483 (S.D.N.Y. 2022)..............................................................................11

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2,*
   419 F. Supp. 3d 668 (S.D.N.Y. 2019)......................................................................21

*Nadeau v. Equity Residential Properties Mgmt. Corp.,*
   251 F. Supp. 3d 637 (S.D.N.Y. 2017)......................................................................19

*Nick's Garage, Inc. v. Progressive Casualty Ins. Co,*
   875 F.3d 107 (2d Cir. 2017) ......................................................................................22

*Orlander v. Staples, Inc.,*
   802 F.3d 289 (2d Cir. 2015) ...............................................................................22, 23

*Pandolfi v. AviaGames, Inc.,*
   2024 WL 4051754 (N.D. Cal. Sept. 4, 2024)....................................................17, 18

*Peleg v. Neiman Marcus Grp., Inc.,*
   204 Cal. App. 4th 1425 (2012) ...........................................................................14, 15

*Peterson v. Insurance Co. of N. Am.,*
   40 F.3d 26 (2d Cir.1994) ..........................................................................................24

*Roach v. BM Motoring, LLC,*
   228 N.J. 163 (2017) ..................................................................................................19

*Robinson v. Disney Online,*
   152 F. Supp. 3d 176 (S.D.N.Y. 2015)......................................................................25

*Salazar v. Nat'l Basketball Ass'n,*
   118 F.4th 533 (2d Cir. 2024).....................................................................................25

*Schnabel v. Trilegiant Corp.,*
   697 F.3d 110 (2d Cir. 2012) ........................................................................................7

*Stone v. Golden Wexler & Sarnese, P.C.,*
   341 F. Supp. 2d 189 (E.D.N.Y) ...............................................................................12

*T & N PLC v. Fred S. James & Co. of N.Y.,*
   29 F.3d 57 (2d Cir. 1994) .........................................................................................19

*TradeComet.com LLC v. Google, Inc.,*
   693 F. Supp. 2d 370 (S.D.N.Y. 2010)......................................................................12

*Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.,*
   2015 WL 4190746 (S.D.N.Y. July 10, 2015) ..........................................................24

*Tsuya v. Plex, Inc. et al.,*
   5:24-cv-09078-EKL, ECF No. 25 (N.D. Cal. Feb. 24, 2025)....................................2

*Upstate Shredding, LLC v. Carloss Well Supply Co.,*
   84 F. Supp. 2d 357 (N.D.N.Y. 2000) .......................................................................11

*Vincent v. Nat'l Debt Relief LLC,*
   2024 WL 3344227 (S.D.N.Y. July 8, 2024) ...............................................................9

*XL Specialty Ins. Co. v. Otto Naumann, Ltd.*,
  2015 WL 1499208 (S.D.N.Y. Mar. 31, 2015) ...................................................................................24

*Zachman v. Hudson Valley Fed. Credit Union*,
  49 F.4th 95 (2d Cir. 2022) .........................................................................................................6

**Statutes**

18 U.S.C. § 2710 ...........................................................................................................................18

N.Y. GBL § 349 ............................................................................................................................21

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................................24

**Treatises**

1 Samuel Williston, Contracts § 43 (3d ed. 1957) .......................................................................14

## PRELIMINARY STATEMENT

Plaintiffs Tosin Balogun and Alexandra Mason brought this action to put a stop to Defendant Advance Magazine Publishers Inc.'s ("Condé Nast") transparent efforts to avoid complying with the arbitration clause that Defendant itself drafted and imposed on Plaintiffs. The Court should recognize Condé Nast's motion for what it is—an attempt to cast itself as the victim of its own drafting choices and deceptive dispute resolution strategy. There is no legal or logical reason why the Court should condone or reward Condé Nast's behavior here. Defendant's Motion to Compel Arbitration or to Dismiss (ECF No. 20) and supporting memorandum of law (ECF No. 21, and "MTD") posit that Condé Nast can impose American Arbitration Association (the "AAA") arbitration on consumers in a contract of adhesion while not even following basic AAA requirements to register the arbitration clause with the AAA, then make unilateral and undisclosed changes to the arbitration provider in an effort to forestall anticipated claims. As if that weren't enough, Condé Nast completely ignored all outreach from Plaintiffs and the AAA concerning these issues for months. And then finally, and only after Plaintiffs filed this lawsuit, Condé Nast now asks the Court to instead compel arbitration at National Arbitration and Mediation ("NAM") based on its surreptitious changes to its website terms.

Defendant's position ignores basic precepts of contract law, including (1) that to enforce a contract or a unilateral contract modification, Defendant must show that Plaintiffs had notice of the terms *and* unambiguously manifested their assent—neither of which is shown here; (2) that Defendant may not unilaterally and without notice update their arbitration agreement to retroactively impose less favorable dispute resolution terms; and (3) that Defendant cannot disregard all communications from Plaintiffs and the AAA about arbitration, then suddenly seek to selectively enforce Defendant's preferred arbitration provisions after Plaintiffs commenced litigation. Condé Nast's arguments concerning Plaintiffs' New York's General Business Law ("GBL") claims are equally meritless, and Defendant does not even argue that Plaintiffs' allegations are insufficient to state a Video Privacy

Protection Act ("VPPA") claim.

There is no merit to Defendant's bizarre insistence that Plaintiffs are somehow in the wrong because they seek to compel AAA arbitration under the rules Plaintiffs believe apply and the amended complaint does not mention "that Condé Nast changed its arbitration provider to NAM." MTD at 56. There is no reason why Plaintiffs' complaint should include facts that have no bearing on their claims. Defendant can raise those arguments on its own behalf, but it should drop the pretense that Plaintiffs have attempted to mislead the Court by not presenting Defendant's anticipated and meritless defenses. Similarly, the Court should reject Defendant's repeated implication that Plaintiffs have acted improperly by wanting to arbitrate under the rules they agreed to rather than the rules hastily chosen by Defendant to deter Plaintiffs' claims. MTD at 11 (asserting that "the real reason Plaintiffs (or at least their counsel) want to arbitrate at AAA and not NAM is because the AAA fee schedule is preferred by plaintiffs' firms threatening business [sic] with mass arbitrations to extort settlements."). This is particularly so when Defendant _never once_ responded to any of Plaintiffs' repeated attempts to contact Defendant while trying to pursue these claims in arbitration and only responded when Plaintiffs actually filed this lawsuit.[1]

While deliberately ignoring Plaintiffs and the AAA, Defendant in the meantime twice altered its arbitration clause without notice, in April 2024 and then later in July 2024, to make any arbitration materially worse for Plaintiffs. The Court should put an end to Defendant's efforts to avoid liability by playing shell games around the applicable arbitral forum and procedural rules. Defendant's motion should be denied in its entirety.

---

[1] *Cf.* Ex. A to Janove Decl. *Tsuya v. Plex, Inc. et al.*, 5:24-cv-09078-EKL, ECF No. 25 (N.D. Cal. Feb. 24, 2025) ("The Court has carefully reviewed the parties' submissions and finds no basis at all for Plex's assertions of 'bad faith.' To the contrary, the record reflects that Plaintiff has dutifully sought to arbitrate his claims under Plex's arbitration agreement. Plaintiff brought this action only after Plex refused to pay the fees required to initiate arbitration, as reflected in Plex's correspondence with JAMS. . . . Unfounded accusations of bad faith erode the civility of the legal profession. The Court admonishes Plex's counsel to focus their advocacy on the merits of the case, and to refrain from ad hominem attacks.")

## BACKGROUND

Defendant Condé Nast operates websites available to subscribers of various notable magazines, including *The New Yorker* and *Vogue*. ECF No. 18 ("FAC") ¶ 2. Condé Nast requires everyone who subscribes to its magazines and/or visits its websites to agree to its standardized arbitration clause, as part of a lengthy set of terms and conditions. *Id.* Plaintiffs visited Condé Nast's websites and agreed to the April 27, 2023 version of its terms and conditions (the "2023 Terms"). ECF No. 18-1; FAC ¶¶ 4, 22-23.

Per the 2023 Terms, any disputes Plaintiffs have with Condé Nast must be brought in arbitration before the AAA. FAC ¶ 4. Accordingly, on April 17, 2024, Plaintiffs notified Condé Nast of their claims and their intention to pursue them in AAA arbitration. FAC ¶¶ 45-46.

The 2023 Terms also provide that:

> This User Agreement may be modified from time to time, so check back often. So that you are aware changes have been made, we will adjust the "Last Updated" date at the beginning of this document. If we make a material change to this User Agreement, we will also post on the Service a prominent notice that a change was made. Continued access, visitation and/or use of the Service by you, or continued receipt of a Product, will constitute your acceptance of any changes or revisions to the User Agreement.

ECF No. 18-1 § I. Condé Nast claims to have invoked this provision on April 16, 2024 to unilaterally update its Terms to switch the arbitration provider from AAA to NAM (these terms are referred to as the "April 2024 Terms"). ECF No. 22 ("Hoffmeyer Decl.") ¶ 4. The timing and hasty implementation of this update strongly suggests that Condé Nast had become aware of the claims against it and changed arbitration providers to deter claimants from attempting to seek redress.

In any event, on April 17, 2024, Plaintiffs, along with other individuals represented by undersigned counsel, initiated the arbitration process by sending a notice of dispute to Condé Nast pursuant to the Terms. FAC ¶ 5. The notice of dispute advised that Plaintiffs and others sought relief under a variety of laws depending on their state of residence and other factors, bringing claims under, *inter alia*, the VPPA and GBL. FAC ¶¶ 6, 46. Condé Nast ignored the notice of dispute. FAC ¶ 48.

Plaintiffs therefore had little choice but to commence arbitration, which they did pursuant to the 2023 Terms that governed their relationship with Condé Nast. FAC ¶ 12. Only then did Plaintiffs learn that Condé Nast had deliberately failed to register the 2023 Terms with the AAA, in clear violation of the AAA's own rules. FAC ¶ 14. Specifically, pursuant to Rule 12 of the AAA's Consumer Rules, when Condé Nast adopted its Terms, it should have notified the AAA of the existence of its contract that contained the arbitration clause and provided a copy of the arbitration agreement to register it on the AAA's Consumer Clause Registry. FAC ¶ 9. This enables the AAA to review the arbitration clause and ensure that it complies with the AAA's Consumer Due Process Protocols. FAC ¶ 10. Instead, after Plaintiffs filed their arbitration, the AAA had to write to Condé Nast asking it to submit the Terms for registration, but Condé Nast ignored that communication as well. FAC ¶¶ 15, 49-63. Because Condé Nast had not registered its clause and ignored the AAA's communications asking it to do so, the AAA "declin[ed] to administer these arbitrations." FAC ¶ 61.

Condé Nast does not deny that it deliberately flouted AAA's rules and requests by not registering the 2023 Terms. FAC ¶¶ 14-16. Instead, Defendant implies that the Court should overlook this deceptive stratagem because Condé Nast switched its arbitration provider to NAM in April 2024 without providing notice to Plaintiffs. Hoffmeyer Decl. ¶¶ 4-5. Thus, Condé Nast contends that "[s]ubmitting Condé Nast's 'current or proposed' consumer agreement to AAA would have meant submitting a contract containing no mention of AAA." MTD at 5. Of course, Condé Nast did not share these views with the AAA or Plaintiffs. Instead, Condé Nast completely ignored the AAA's communications and Plaintiffs' repeated outreach. FAC ¶¶ 54, 63. These included the initial April 17, 2024 communication, a June 18, 2024 letter notifying Defendant that claims had been filed and serving upon it all the AAA case initiation documents, FAC ¶¶ 50-51, a July 9, 2024 email to Condé Nast's deputy general counsel, FAC ¶ 52, and service of individual demands to Condé Nast via USPS Certified Mail, FAC ¶ 53—none of which were responded to by Condé Nast. FAC ¶¶ 54, 63.

Although Defendant did not respond to the July 9, 2024 correspondence, it did take actions that strongly suggest it received Plaintiffs' communications and was aware of their claims. On July 30, 2024, Defendant again updated its Terms to make them materially worse for consumers attempting to arbitrate, adding some hastily copied boilerplate language regarding NAM batch arbitration in a transparent attempt to frustrate Plaintiffs' arbitrations. Hoffmeyer Decl. ¶ 6. The new section of the July 2024 updated terms ("July 2024 Terms") repeatedly refers to "[Business]" in brackets—presumably because Defendant forgot to fill in that information or didn't read the new terms carefully enough to understand that it was supposed to fill in the name of the business. ECF No. 22-2, § VIII.G.3.viii ("You agree to cooperate in good faith with [Business] and NAM to implement such a 'batch approach'…") (brackets in original).

Meanwhile, having heard nothing from Defendant and with the AAA arbitrations closed, Plaintiffs brought this proposed class action. Only then did Defendant finally share with Plaintiffs its mistaken view that arbitration must proceed at NAM rather than the AAA and moved to dismiss, arguing on the merits and also challenging subject matter jurisdiction. ECF No. 13. To moot unnecessary arguments about subject matter jurisdiction and more importantly, to ensure that Plaintiffs would be able to seek relief if AAA does not eventually administer the arbitrations, Plaintiffs filed an amended complaint that added an alternative count for relief under the VPPA. ECF No. 18.

As explained below, Defendant's intransigent refusal to arbitrate in accordance with the Terms agreed to by Plaintiffs is a material breach of the arbitration agreement that renders it unenforceable at Plaintiffs' option. Hence, although Plaintiffs initially sought to arbitrate their claims before the AAA, they now seek, in the alternative, relief from this Court on behalf of themselves and the proposed classes under the VPPA, particularly given that the AAA may not even allow the arbitrations to

proceed even if Defendant approaches the AAA to reopen the arbitration. FAC ¶ 62.[2] Plaintiffs thus allege that Defendant has willfully violated the VPPA by deploying technologies on their magazine websites—including the Meta pixel that discloses Plaintiffs' identifying information and video viewing histories to third parties without consent. FAC ¶¶ 67-82.

## LEGAL STANDARDS

"Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists." *Galeana v. Mahasan Inc.*, 2019 WL 3024588, at *3 (S.D.N.Y. July 11, 2019) (Broderick, J.). In assessing a motion to compel arbitration, courts apply "the standard for a summary judgment motion." *Id.* "If the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (citation omitted).

"To survive a motion to dismiss under Fed. R. Civ. P. 12 (b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mackenzie v. Waypointe Partners Mgmt. LLC*, 2025 WL 388296, at *2 (S.D.N.Y. Feb. 4, 2025) (Broderick, J.) (citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor." *Id.*

---

[2] Condé Nast suggests that Plaintiffs seek to pursue some claims here and others in arbitration. MTD at 9 ("Here, where Plaintiffs seek the benefit of Condé Nast's arbitration clause to assert their non-VPPA claims, they cannot simultaneously repudiate the part of that clause they do not like.") That is inaccurate. Plaintiffs' goal is to pursue all claims against Condé Nast in the same forum and they will file a second amended complaint if necessary.

# ARGUMENT

## I. The Court Should Deny Defendant's Motion to Compel Arbitration Under the Updated Terms

Condé Nast's motion carefully avoids specifying which updated Terms it is asking this Court to enforce. The motion makes repeated references to the April 2024 Terms and presents as if Defendant simply wants the Court to order NAM arbitration under those terms. However, the supporting declaration also references the July 2024 update, although it does not disclose to the Court which changes it made in the July 2024 Terms. Hoffmeyer Decl. ¶ 6 (stating, without further explanation: "The next time that Condé Nast updated the User Agreement was on July 30, 2024," and attaching a copy). Defendant's argument about their ability to automatically bind Plaintiffs to updated terms also suggests that it may actually seek to enforce the July 2024 Terms. Although Plaintiffs believe the Court should disallow any argument that the July 2024 Terms apply given Condé Nast's presentation, it addresses both sets of terms to be comprehensive. *See Kumaran v. Nat'l Future Ass'n*, 2024 WL 2330655, at *2 (S.D.N.Y. May 22, 2024) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief.") (cleaned up).

With that noted, the April 2024 and July 2024 Terms are not binding on Plaintiffs for multiple reasons. First, Defendant has failed to show that Plaintiffs (1) had inquiry notice of the April 2024 and July 2024 Terms, and (2) unambiguously manifested assent to them. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012). Second, Defendant's argument that it can make unilateral modifications is not supported by the 2023 Terms' plain language (which is repeated in both the April 2024 and July 2024 Terms) or Defendant's authorities. Finally, the unilateral modification here is unenforceable as illusory and unconscionable.

### A. Plaintiffs Did Not Agree to Updated Terms

#### 1. Defendant Does Not Show Notice and Assent as to Plaintiff Mason

Defendant does not cite any evidence that Plaintiff Alexandra Mason had notice of or assented

to either the April or July 2024 Terms. Notice is required to form any binding contract. *See Meyer*, 868 F.3d at 74. Defendant admits Plaintiff Mason "purchased print subscriptions to Vogue and Bon Appetit from a third party, and not from Condé Nast directly." Hoffmeyer Decl. ¶ 14. Accordingly, Defendant's motion to compel arbitration as to Plaintiff Mason fails because there is no evidence that she agreed to NAM arbitration. To the extent that Defendant is arguing that it could unilaterally impose changes to its agreement with Plaintiff Mason without notice via the Terms' modification provision, that argument fails. *See* Section II, below.

### 2. Defendant Does Not Show Notice and Assent as to Plaintiff Balogun

Defendant lacks any evidence Plaintiff Balogun agreed to the April 2024 Terms, under which it asserts it is moving to compel. Defendant relies only on the fact that Plaintiff Balogun logged in to her Vogue account on September 18, 2024 to argue that she agreed to updated terms. MTD at 19-21. But as of September, the July 2024 Terms were in place. Hoffmeyer Decl. ¶ 6. So, to the extent Plaintiff Balogun had any notice, it would be only of the July 2024 Terms. Defendant makes no showing that Plaintiff Balogun had notice at any earlier point of any updates, and thus entirely fails to show her notice of the April 2024 Terms or assent to them. And because Defendant moves to compel arbitration under only the April 2024 Terms as to Plaintiff Balogun, MTD at 1, for that reason alone, Defendant's Motion should be denied.

To the extent Defendant's Motion is construed as attempting to enforce the July 2024 Terms, the undisputed record shows that Plaintiff Balogun did not assent to them either. As Plaintiff Balogun declares, on September 18, 2024, she visited the Vogue website and logged into her account *solely* to assist in investigating her legal claims and in preparation for filing the original complaint in this action by obtaining a copy of her invoice and record of payment for her Vogue subscription. Balogun Decl. ¶ 5. She was aware of no other means of obtaining a copy of her invoice other than by logging into her account to retrieve it. *Id.* ¶ 8. She had searched emails and other records, and could not find the

invoice, which was neither emailed nor physically mailed to her. *Id.* Importantly, after obtaining this information she immediately exited the website—the specific mechanism identified in the 2024 Terms for rejecting the Terms. *Id.* ¶ 6.

This conduct demonstrates multiple reasons that Plaintiff Balogun did not unambiguously manifest assent to any new terms. First, all versions of Defendant's Terms, including the July 2024 Terms, expressly state in bolded language: **"If you don't agree to the terms contained in this User Agreement, you must immediately exit the Service."** ECF No. 18-1 at 25, 22-1 at 31, 22-2 at 35. That is precisely what Plaintiff Balogun did, as attested to in her declaration. Balogun Decl. ¶ 4–8. She did not agree to the July 2024 Terms and immediately exited the website after obtaining her invoice. Balogun Decl. ¶ 6.

Second, Defendant cannot show that Plaintiff Balogun "unambiguously manifested assent" to any updated terms because her conduct was not what a "reasonable person would understand to constitute assent." *Cf. Vincent v. Nat'l Debt Relief LLC*, 2024 WL 3344227, at *6 (S.D.N.Y. July 8, 2024). No reasonable person would believe that by logging solely to collect evidence to pursue her legal claims against Defendant at the AAA, and not to access or use Defendant's services, Plaintiff Balogun could be unambiguously manifesting assent to whatever new terms Defendant imposed. Nor could it have been reasonably understood that just by logging into her account without using the service and then immediately exiting—the exact mechanism specified for declining the Terms—she was somehow manifesting assent to updated terms and a different form of arbitration. *See Galeana v. Mahasan Inc.*, 2019 WL 3024588, at *5 (S.D.N.Y. July 11, 2019) (Broderick, J.) ("Defendants have not demonstrated by a preponderance of the evidence that the words, acts, and conduct of Longwilai demonstrated an intent to be bound by an agreement to arbitrate."). Further, Defendant knew that Plaintiff Balogun was repeatedly attempting to enforce her rights under the 2023 Terms by sending a demand letter and then filing with the AAA, further evidence that she was not agreeing to a different form of arbitration.

### B.    The 2023 Terms Did Not Authorize Defendant's Unilateral Modifications

Having failed to show notice or assent to the 2024 Terms, Defendant focuses most of its argument on the idea that the 2023 Terms allowed Defendant to make unilateral modifications. In its view, because Plaintiffs agreed to the 2023 Terms and Defendant's unilateral right to change the terms, they should automatically be deemed to agree to any updates at Defendant's whim and without notice.

As a threshold matter, Defendant misreads the modification provision in the 2023 Terms, which does not "confer on one side the power to make unilateral changes to an agreement to arbitrate," as Defendant suggests. MTD at 9. Instead, the 2023 Terms contemplate Defendant placing a "prominent notice that a [material] change was made," 2023 Terms § I, which Defendant does not even attempt to show occurred here. (Defendant merely points to its standard sign-in screen for the website, which does not flag that a change was made. MTD at 12.) Defendant instead argues that the change in arbitration provider is immaterial—a surprising take given that Defendant is here litigating this matter for no reason other than to avoid arbitration with the AAA in favor of NAM, significantly undermining the notion there is no material difference between the two. Defendant also describes its conduct as "notify[ing] users by updating the webpage and adjusting the 'Last Updated' date." MTD at 10. But making a change and not telling anyone about it does not conform with any reasonable definition of the word "notifying." The fact that users could investigate on their own and deduce that some unspecified update had been made by going to the website and locating the "last updated" date, does not change the fact that no notice was given.

More importantly, the 2023 Terms clearly provide that "acceptance of any changes or revisions to the User Agreement" would be manifested by "continued access, visitation and/or use of the

Service[3] by you, or continued receipt of a Product." 2023 Terms § I. Yet Defendant has not established that either Plaintiff manifested acceptance in the manner set by the Terms. *See* Section I.A, *supra*. That the Terms recommend users to "check back often" does not mean that users are automatically deemed to have agreed to the updated terms without taking an action, especially when the 2023 Terms specifically provide a different mechanism by which users would manifest consent. 2023 Terms § I. In sum, the updates are unenforceable because Defendant did not follow its own modification procedures.

*Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 492–93 (S.D.N.Y. 2022) is instructive. There the court denied a motion to compel arbitration by Postmates because Postmates did not follow the contract modification procedure, which required amendment to be signed by both parties. As a result, "Postmates Modified Terms, which Plaintiff did not sign," were not effective as to Plaintiff and "the original agreement, which concededly includes no arbitration agreement, govern[ed] their relationship." *Id.* at 492–93. The same logic applies here. The initial agreement between Plaintiffs and Defendant unambiguously provided the mechanism through which Plaintiffs would agree to any updated terms, and did not authorize any unilateral amendments without notice to the counterparty.

None of the cases Defendant relies on address remotely similar circumstances. Cases where a party seeks to assert contract-based claims against a non-signatory to a contract, while also arguing that the arbitration clause in the same contract does not apply to the non-party, do not support Defendant's arguments. *See, e.g. Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000) ("[T]hey claim reliance on the Express Warranty to establish a claim for breach of the express warranty and, at the same time, disclaim reliance on that same warranty to avoid

---

[3] Section IX of the 2023 Terms defines "Service" to include "each website, mobile site, application, email/text/SMS campaign, event, and/or other activity, offering, or publication (regardless of how distributed, transmitted, published, or broadcast) provided by us…."

arbitration."); *Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*, 1999 WL 637236, at *7 (S.D.N.Y. Aug 20, 1999). Nor is this at all analogous to *Instituto De Resseguros Do Brasil v. First State Ins. Co.*, 221 A.D.2d 266, 266 (1st Dep't 1995), a case that does not even address unilateral modification but rather a mutual modification where "[t]he record reveals that the parties herein specifically agreed, in writing" to alter the arbitration clause. No such specific agreement, in writing, exists here.

Defendant's authorities for the point that "district courts in this Circuit routinely recognize that unilateral amendments are valid, so long as they fall in the scope of changes permitted by the modification clause," MTD at 9, also show why Plaintiffs should prevail here. As demonstrated above, the "modification clause" Defendant relies on does not authorize unilateral amendments without any notice or showing of assent. Moreover, none of Defendant's authorities allowed a party to unilaterally impose new terms without any notice to its counterparty.

In *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 373-74 (S.D.N.Y. 2010) the "unilateral modification" clause required that copies of any amendments would be sent to the counterparty, and the amendment was actually sent. The Court also observed that changes that were not "reasonably communicated" would not be enforceable. *Id.* at 374; *see also Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189, 191 (E.D.N.Y) (refusing to enforce modification, even where defendant "mailed plaintiff a notice indicating that, unless plaintiff opted out within a year, the Bank would add an arbitration clause to the Customer Agreement" and "[t]he notice included a 'rejection coupon'"); *Micheli*, 588 F. Supp. 3d at 488 ("Each time, [it updated its Terms] DoorDash sent an email to Plaintiff advising it of the changes."). Likewise, in *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 377-78 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011), Google "offer[ed] testimony and screenshots showing the status of TradeComet's AdWords accounts to support its contention that TradeComet accepted the August 2006 Agreement *and that it had to click through the text of that agreement to do so*."(emphasis added). Here, Defendant has made no showing that it gave either Plaintiff *any notice*

of the April 2024 Terms, much less notice of the specific changes made, and as to the July 2024 Terms, Plaintiff Balogun presents evidence showing she rejected them. *Cf. Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at **3-4 (S.D.N.Y. July 8, 2024) (finding sufficient notice of new arbitration provider, where "Respondent sent an email to the email addresses" and "distributed an in-app pop-up notification" and that pop-up notification explicitly mentioned "an updated arbitration clause.").

### C.    The 2024 Terms' Arbitration Clause is Illusory and Unconscionable

Defendant's April and July 2024 Terms would be unenforceable even if Defendant could show that Plaintiffs agreed to them. "[T]he analysis of whether a unilateral right to modify an arbitration agreement renders that agreement illusory and unenforceable turns on reasonableness and fair notice." *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 107 (E.D.N.Y. 2015). For example, where the unilateral modification contains a "thirty-day notice and an opportunity to opt out [of the change]" and "the arbitration provision was never materially changed," the unilateral modification clause is not illusory. *See id.* at 106–107. Here, by contrast, Defendant's actions show that it believes it can make unilateral changes at any time, without giving any notice other than posting updated terms on its website. Using this approach, Defendant twice updated its arbitration clause without notice to frustrate Plaintiffs' arbitrations. It first did so on April 16, 2024 to switch the arbitration provider to NAM. It then made the arbitration clause materially worse by adding a new batching provision on July 30, 2024, only a few weeks after Plaintiffs' counsel on July 9 attempted to contact Defendant's general counsel regarding Plaintiffs' and the AAA's unanswered correspondence. The law does not allow this type of unilateral modification.

### 1.    Defendant Did Not Provide Notice

As discussed above, Defendant did not take any affirmative step to provide notice of the modification to Plaintiffs and its users, and "the unilateral power to modify terms of the agreement without notice" is both "unfair and illusory." *See Lovinfosse v. Lowe's Home Centers, LLP.*, 2024 WL

3732436, at *7 (E.D. Va. Aug. 8, 2024) ("[E]nforcing the arbitration provision is not appropriate because the unfettered discretion Defendant retained to modify or revoke the provision without notice rendered its promise to arbitrate illusory."); *Flores v. Nat'l Football League*, 2023 WL 4744191, at *4 (S.D.N.Y. July 25, 2023) ("Numerous courts . . . decline to enforce contracts that permit one party unilaterally to modify the terms without notifying the counterparty of any changes."); *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir. 2000) (concluding that a "promise to provide an arbitral forum is fatally indefinite" when a party "reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from" its counterparties) (citing 1 Samuel Williston, Contracts § 43 at 140 (3d ed. 1957)).

Defendant's actions only illustrate why courts do not allow unilateral modification without notice. According to Defendant, it has unlimited right to alter the arbitration process to prevent Plaintiffs from ever arbitrating. Plaintiffs could file their arbitrations in NAM tomorrow and Defendant could merely update its arbitration clause to select a different provider or add new preconditions before Plaintiffs could even arbitrate. *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1459 (2012) (in holding modification provision was illusory, observing that "[t]he vice of the modification provision in this case is that it allows the employer to manipulate the arbitration process, tailoring it to fit specific cases, either by making the process more difficult or more expensive for the employee . . .").

It is undisputed that Defendant did not provide *any* notice to Plaintiff Mason. *See* Section I.A.1, *supra*. As to Plaintiff Balogun, who logged into her account on September 18, 2024 to assist in filing this legal claim—months after Plaintiff sent her initial notice of dispute to Defendant and the AAA closed the arbitrations—Defendant claims to have "notif[ied]" her of the new terms "by updating the webpage and adjusting the 'Last Updated' date." MTD at 10; Balogun Decl. ¶ 5. Again, using the word "notifying" to describe this action does not change the fact that no notice was given, and users were

never told what changed with the update to lengthy Terms. None of Defendant's authorities suggest that this kind of "notice" would be adequate. Accordingly, on these facts alone, Defendant's unilateral modification provision is illusory.

### 2. The Updated Terms are Unconscionable

Even if the Court does not determine the unilateral modification terms are illusory if interpreted in the manner suggested by Defendant, it would be particularly unconscionable for Defendant to gatekeep Plaintiff Balogun's access to relevant evidence for her claim by making it only accessible to her in her online account—and by no other method—and then forcing her to assent to whatever updated terms Defendant imposed in order to access that information to substantiate her legal claims. As demonstrated above, Plaintiff Balogun's conduct clearly manifested her non-assent in accordance with the plain language of the Terms because she immediately exited her account after retrieving her invoice. Balogun Decl. ¶ 6.

In addition, multiple provisions of the 2024 Terms are unconscionable. First, arbitration clauses that can be changed at any time and apply retroactively are unconscionable. As the Ninth Circuit recently recognized, retroactive application of an arbitration clause "is procedurally unconscionable under California law." *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 683 (9th Cir. 2024); *see id.* (quoting *Peleg*, 204 Cal. App. 4th 1425) ("[A]n arbitration contract containing a modification provision is illusory if . . . a contract change[ ] applies to claims that have accrued or are known."). There is no material difference here between California and New York law, which imposes limits on the retroactive application of updated terms consistent with the "implied duty of good faith and fair dealing." *See Bassett*, 93 F. Supp. 3d at 107. More broadly, cases on this point merely apply general principals under the FAA and contract law. *See Peleg*, 204 Cal.App.4th at 1461 ("The prevailing view under the FAA regarding illusory arbitration agreements is . . . that . . . [a]n employer's unrestricted right to amend, modify, or terminate an arbitration agreement at any time renders the

agreement illusory.").

Second, allowing Defendant the unfettered right to change arbitration providers is unconscionable. As the Tenth Circuit explained in *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240 (10th Cir. 2018), an arbitration clause that allows the Defendant the unilateral right to select an arbitration provider at whim is unconscionable because "[n]othing would prevent [defendant] from selecting an arbitration provider with only one arbitrator favorable to [defendant] or from selecting an arbitration provider that employs only biased arbitrators." *Id.* at 1258. As the Court observed, "[w]here the specific arbitration service is named in the agreement, the weaker party can assess the neutrality of that provider before executing the agreement and will not be subject to unfair surprise when the stronger party later selects a suspect arbitration service." *Id.* So too here. Defendant can—and has— changed arbitration providers and the rules governing that arbitration at will such that no party could ever rely on Defendant's Terms to "assess" whether it should execute the agreement based on their reading of the arbitration clause's strength.

Third, as to the July 2024 Terms specifically (of which only Plaintiff Balogun could even have had any notice of), they are substantively unconscionable because they contain a fundamentally unfair batch arbitration clause. On July 30, 2024, just a few weeks after Plaintiffs' counsel on July 9 attempted to contact Defendant's general counsel regarding Plaintiffs' and the AAA's unanswered correspondence to Defendant, FAC ¶ 52, Defendant appears to have copied some boilerplate language regarding NAM batch arbitration to make it even worse for Plaintiffs if they even wanted to file in NAM. The July 2024 Terms' new batch arbitration section that repeatedly states "[Business]" in brackets—presumably because Defendant forgot to fill in that information or didn't read the new terms carefully enough to understand that it was supposed to fill in the name of the business. *See* July 2024 Terms § VIII. G.3.vii ("You agree to cooperate in good faith with [Business] and NAM to implement such a "batch approach") (brackets in original). The batching provision is unconscionable.

The July 2024 Terms require batching arbitrations at only 25 at a time, meaning that 25 claims are assigned to a single arbitrator and no other arbitrations can proceed until the first 25 are completed. July 2024 Terms § VIII.G.3.viii. But Defendant's magazines are widely circulated and its websites produce over 4,000 videos annually—attracting over 1.2 billion global video views each month. FAC ¶ 69. So, the delay caused by requiring customers to proceed in sequential batches of 25 at a time renders the provision substantively unconscionable. *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *6 (N.D. Cal. Sept. 4, 2024) (holding unconscionable "the bellwether provision allows for arbitration of only twenty cases at a time – and with the default of only one case being assigned to each arbitrator" because it "unconscionably delays adjudication of claims."). And because the batch provision is triggered when 25 or more substantially similar demands are filed by "the same law firm(s)," July 2024 Terms § VIII.G.3.viii, it unconscionably penalizes consumers and "affects the right to counsel of their choice or indeed, the ability to find any counsel at all: where the individual claims are small (as consumer claims often are), it may be difficult to find an attorney who represents only a single or small number of similarly situated clients." *See Pandolfi*, 2024 WL 4051754 at *6.

Fourth, both the April 2024 and July 2024 Terms are also unconscionable because they artificially shorten the statute of limitations for consumers' claims to only one year, *see* April 2024 Terms § VIII.G.3.i & July 2024 Terms § VIII.G.4.i, whereas Plaintiffs' claims under the VPPA have a two-year statute of limitation. 18 U.S.C. § 2710(c)(3); *see Pandolfi*, 2024 WL 4051754 at *6 (statute-of-limitations provision "substantively unconscionable" because it "significantly shortens the limitations period for Plaintiffs' statutory claims.").

Defendant does not mention the July 2024 Terms' batching clause at all but nonetheless claims that "even where courts were asked to assess NAM's rule and fee schedules, court consistently hold that NAM's procedures and fees are enforceable." MTD at 11 (citing three cases from California federal courts applying California unconscionability law). But the authorities Defendant relies on have

no relevance because the NAM rules at issue in those cases were the Employment Rules and Procedures and did not involve the consumer rules nor unconscionable batching terms.

In sum, even if Plaintiffs agreed to the April or July 2024 Terms—which they have not—the Court should still not enforce those terms because they contain multiple elements of unconscionability that render the 2024 Terms' arbitration agreement unenforceable in its entirety. *See Pandolfi*, 2024 WL 4051754, at *6 ("[T]hese provisions are designed to structurally and systematically make arbitration an inferior forum. They also operate to chill players from even pursuing rights, knowing they would likely be funneled into an arbitration process that could take years, possibly decades, to complete. The Court will not sever the offending provisions from the arbitration agreement.").[4]

## II. Plaintiffs State Their Breach of Contract Claims, and as a Result, Defendant Cannot Enforce the 2023 Terms' Class Action Waiver

Plaintiffs' allegations of breach of contract are based on the 2023 Terms, which apply for the reasons explained above. Plaintiffs have stated a claim for breach of contract: the terms require AAA arbitration and Defendant now refuses to comply with that obligation. FAC ¶¶ 102-116.

Defendant mistakenly contends that Plaintiffs must allege damages to state a contract claim, and have failed to do so. MTD at 20. Not so. Even if Plaintiffs' attempts to arbitrate in the AAA and make Defendant comply with its contract for the better part of a year cannot be quantified into a dollar damages amount, Plaintiffs "'have plausible claims for nominal damages.'" *See Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 113 (S.D.N.Y. 2018) (quoting *Luitpold Pharms., Inc.*

---

[4] *Brooks v. WarnerMedia Direct,* 2024 WL 3330305, at *3-4 does not hold otherwise. *Brooks'* holding that California law allowed retroactive application of an updated dispute resolution procedure is no longer good law because the Ninth Circuit has since ruled that a retroactive application of an arbitration clause "is procedurally unconscionable under California law." *Heckman*, 120 F.4th at 683. *Brooks* is also distinguishable as to unconscionability because the batching procedures there allowed "fifty claims to proceed in the first round, one hundred claims to proceed in the second round, and two hundred claims to proceed in the third round, meaning many more arbitrations would occur in a much quicker timeframe than pursuant to the operative procedure" than in other cases finding batching unconscionable. 2024 WL 3330305 at *18. As described above, the batching provision in the 2024 Terms would cause significantly greater delay and similar provisions have been held unconscionable.

*v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 86–87 (2d Cir. 2015)). That is because, "under New York law, "'nominal damages are always available for breach of contract.'" *Id.* (quoting *T & N PLC v. Fred S. James & Co. of N.Y.*, 29 F.3d 57 (2d Cir. 1994))

Regardless, at a minimum, Plaintiffs have properly alleged a breach of contract seeking specific performance in the form of an order that Defendant must participate in AAA arbitration. FAC ¶¶ 102-117; *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 487 (S.D.N.Y. 2022) ("[C]ourts typically . . . permit . . . plaintiff[s] to seek specific performance as a remedy for the breached contract."). And monetary damages, which would be nominal here, are plainly inadequate to remedy Defendant's breach—so Plaintiff does not have an adequate remedy at law. FAC ¶¶ 114-16; *see Camelot*, 632 F. Supp. 3d at 486.

Because Defendant has materially breached the arbitration agreement, it cannot now selectively enforce the 2023 Terms' class waiver, contained in Section 7 of the 2023 Terms, entitled "Arbitration, Waiver of Class Action Suits, and Dispute Resolution." "Under New York law, when a party to a contract materially breaches that contract, it cannot then enforce that contract against a non-breaching party." *Nadeau v. Equity Residential Properties Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (citing *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)). Defendant materially breached the 2023 Terms' arbitration agreement, containing a class waiver, "by refusing to arbitrate before the AAA." *See Nadeau*, 251 F. Supp. 3d at 641. Defendant "therefore cannot now" enforce other aspects of the 2023 Terms' dispute resolution mechanism against Plaintiffs. *Id.*

As the court in *Nadeau* explained, "[t]o hold otherwise 'would set up a perverse incentive scheme,' contrary to the FAA and common sense." *Id.* (quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005)); *see also Brown*, 430 F.3d at 1012 ("We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings."); *Roach v. BM Motoring, LLC*, 228 N.J. 163, 180 (2017) ("Several months after the arbitration demands were filed and served,

plaintiffs filed their complaint in the Superior Court. It was only then that defendants first asserted that the [agreement] 'does not contemplate using AAA as the forum' and that they consistently do not arbitrate before the AAA because of 'the excessive administrative fees.' Had there truly been a dispute regarding the proper forum, defendants should have alerted plaintiffs within a reasonable time.").

There is no reason to incentivize companies like Defendant to refuse to honor their arbitration agreements by allowing them to still enforce a class waiver that would prevent Plaintiffs from efficiently and effectively enforcing the arbitration clause on behalf of all of the similarly situated individuals who also suffered from Defendant's material breach of the arbitration clause. Defendant's authorities simply hold that a class action waiver is generally enforceable but do not suggest that enforcement would be appropriate in these circumstances. And, while Defendant argues that Plaintiffs are picking and choosing which terms to enforce, MTD at 25, the opposite is true. Plaintiffs are trying to enforce the arbitration clause, and once enforced, they will conduct individual arbitrations in AAA (assuming the AAA reopens the case). In other words, once Defendant abides by the contract thanks to this case, Plaintiffs will honor the class waiver.

It is Defendant picking and choosing which terms to enforce here, as its own authority illustrates. Defendant relies on *Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793 (S.D.N.Y. Mar. 5, 2004). There, R.J. Reynolds attempted to enforce the forum selection clause in the contract, which the Court upheld because "it would deprive Reynolds of a bargained for benefit of the [contract]." *See id.* at *5. In other words, the party wanted to enforce the bargained-for dispute resolution term in the contract. But unlike Condé Nast, R.J. Reynolds had not materially breached the contract's dispute resolution term and just wanted to enforce the contract. If Reynolds had breached

the dispute clause, it would not have been able to enforce it.[5]

In short, "Defendant[] materially breached the arbitration agreements and cannot, now, selectively enforce them against Plaintiffs. [It] must litigate. And [it] must litigate against a class if the Plaintiffs choose to pursue their claims collectively." *Gomez v. MLB Enterprises, Corp.*, 2018 WL 3019102, at *13 (S.D.N.Y. June 5, 2018); *see also Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Zaro Bake Shop, Inc.*, 2021 WL 2350094, at *17 (S.D.N.Y. June 8, 2021) ("[If] the party not responding to the AAA or not paying the required fees is later permitted to pursue arbitration, that party refusing to cooperate with arbitration could indefinitely postpone litigation.") (cleaned up).

## III.    Plaintiffs State Their GBL § 349 Claims

"Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state' and provides a cause of action to 'any person who has been injured'" by a violation of the section. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (quoting GBL §§ 349(a), (h)). "In order to successfully assert a claim under GBL § 349, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 41 (N.D.N.Y. 2022) (citation omitted). While a plaintiff must allege injury as part of a GBL § 349 claim, "it need not be pecuniary harm." *Gibson v. Bank of Am., N.A.*, 2017 WL 11685868, at *9 (E.D.N.Y. July 14, 2017). Moreover, "'[c]ourts have recognize[d] several types of harm which might be cognizable as a legal injury, such as physical, emotional, pecuniary or reputational harm, or the impairment of a recognized legal right.'" *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (citing *In re Sling*

---

[5] Further, as Defendant also point out, New York courts disfavor attempts to selectively "rely on the contract when it works to their advantage . . . but then repudiate the contract and its arbitration clause when they believe it works against them." MTD at 8-9 (quoting *Fluor*, 1999 WL 637236 at *7 ). So too the Court should not permit Defendant to selectively enforce the class waiver while repudiating the AAA arbitration clause.

*Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016)).

Plaintiffs allege all elements. Defendant engaged in materially misleading consumer-oriented conduct by mandating arbitration before the AAA in its 2023 Terms, but then not registering its arbitration clause with the AAA—making it impossible for claimants to proceed with the arbitration. FAC ¶¶ 4-17. They compounded this misconduct by ignoring both Plaintiffs' and the AAA's repeated attempts to contact Defendant, causing the AAA to close the arbitrations. *Id.* ¶¶ 129-31, 143.[6] Plaintiffs are injured by their lost time and efforts to repeatedly try to arbitrate, and the unnecessary time and effort required to litigate this case instead of in AAA arbitration. *Id.* ¶¶ 45-65, 143-146.

This type of non-pecuniary injury is compensable under the GBL by statutory damages. *See In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 329 (S.D.N.Y. 2018) ("Plaintiffs may recover for lost *personal* time under the GBL . . . [and] Plaintiffs here may be entitled to statutory damages") (citing *Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*, 467 N.Y.S.2d 471 (N.Y. App. Term 1983)). Further, that Plaintiffs' GBL claims track their breach of contract claim makes no difference. *See Lamoureux*, 592 F. Supp. 3d at 41 (rejecting defendant's argument for dismissal of a GBL § 349 claim for not alleging damages separate from breach of contract and observing the Second Circuit has "permitted co-existence of a breach-of-contract claim and a GBL § 349 claim") (citing *Nick's Garage, Inc. v. Progressive Casualty Ins. Co*, 875 F.3d 107 (2d Cir. 2017)).

Defendant incorrectly contends that "'a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." MTD at 17 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)). But that is only one of many

---

[6] Defendant does not challenge Plaintiffs' allegation that NY GBL § 349 applies to non-New York resident because not only are the Terms governed by New York law, but also because it is a New York corporation, headquartered in New York, with relevant personnel in New York who adopted the arbitration clause and Defendant's consumer-oriented conduct otherwise originated and emanated from New York. FAC ¶¶ 132-41. Nor would any challenge be successful given "the strength of New York's connection to the allegedly deceptive transaction[s]." *See Cruz*, 720 F.3d at 122; *Barron v. Helbiz Inc.*, 2023 WL 5672640, at *8 (S.D.N.Y. Sept. 1, 2023).

ways a Plaintiff may plead a GBL § 349 claim. *See, e.g.*, *Michelo*, 419 F. Supp. 3d at 706. The statutory text is broadly worded and Defendant offers no reason or authority that simply because most GBL claims involve deception and a product purchase, all claims under the GBL must fit that fact pattern. To the contrary, the Second Circuit in *Orlander*—Defendant's own authority—allowed a breach of contract claim to proceed alongside a GBL § 349 claim, and also made clear that a "failure to deliver contracted-for services" amounted to a GBL injury. *See* 804 F.3d at 300–302. Similarly, Defendant here failed to deliver on its contracted agreement to engage in good-faith dispute resolution and participate in AAA arbitrations. Although the injury in *Orlander* included monetary damages, the GBL does not require that the injury be only pecuniary. *See e.g., Michelo*, 419 F. Supp. 3d at 706.

Defendant also mistakenly charges that Plaintiffs did not "rely" on the 2023 Terms or sufficiently allege that their injury was caused by anything Plaintiffs saw in the terms. MTD at 8. In fact, Plaintiffs relied on the 2023 Terms' representation that arbitrations must be brought to the AAA, and followed the 2023 Terms' dispute resolution procedures by first sending notice to Defendant and following through by filing with the AAA, only to be injured by Defendant's frustration of the arbitrations and wasting Plaintiffs' time. FAC ¶¶ 4-17, 45-65, 143-146. In sum, Plaintiffs have sufficiently pled their GBL claims.

## IV.    Plaintiffs Permissibly Plead Their VPPA Claim in the Alternative

Plaintiffs permissibly allege in the alternative, that to the extent the arbitrations do not proceed in the AAA, they bring VPPA claims here. *See* FAC ¶ 21 ("In the alternative, to the extent Plaintiffs claims are not arbitrated before the AAA, Plaintiffs seek relief on behalf of themselves and the proposed classes under the VPPA."). There is no guarantee that if Defendant now honors its arbitration clause—either voluntarily, or as a result of a Court order here—that the AAA would even administer these arbitrations. As the AAA advised Defendant in its August 12, 2024 letter closing the arbitrations, "If the business advises the AAA in the future of its intention to comply with the AAA's

Consumer Arbitration Rules and if applicable, resolves any outstanding payment obligations, *the AAA may consider at its sole discretion*, accepting newly filed consumer cases going forward." *See* ECF No. 18-3, FAC Ex. C (emphasis added).

Fed. R. Civ. P. 8 allows plaintiffs to plead in the alternative, and "causes of action that are inconsistent are permitted so long as they are plead in separate counts." *Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, 2015 WL 4190746, at *2 (S.D.N.Y. July 10, 2015) (citation omitted). And "'[u]nder our system of notice pleading and pleading in the alternative, a party should plead all theories that he wishes to pursue.'" *Id.* (quoting *Peterson v. Insurance Co. of N. Am.*, 40 F.3d 26, 32 n. 3 (2d Cir.1994)).

Defendant argues only that Plaintiffs' VPPA claim is impermissibly inconsistent because Plaintiffs cannot try to bring a VPPA claim in court when they also "allege they entered into an arbitration agreement." MTD at 23-24. Not so. Plaintiffs are not alleging they both entered and did not enter an arbitration agreement. They allege that they (a) had an arbitration agreement, (b) Defendant breached it, and (c) that to the extent to the extent their claims do not proceed in arbitration before the AAA, they can pursue their VPPA claim in court. *See* FAC ¶ 21. Plainly, Plaintiffs do not allege incompatible or contradictory factual like those at issue in all of Defendant's authorities. *XL Specialty Ins. Co. v. Otto Naumann, Ltd.*, 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015) (party impermissibly alleged that it both gave the counterparty a painting but also alleged it did not give the party the painting); *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) (plaintiff impermissibly alleged that defendant was wilfully blind to the infringement but at the same time alleged had actual knowledge of the infringement); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 441 (S.D.N.Y. 2001) (plaintiff alleged it did not know about alleged misstatements but also alleged it relied on the misstatements).

Defendant does not and cannot challenge the sufficiency of Plaintiffs' VPPA allegations because they are well pled. Defendant also cannot raise new arguments as to the sufficiency of the

VPPA allegations on reply as they have waived any such argument by not including it in their opening brief. *See Kumara*, 2024 WL 2330655, at \*2.

Plaintiffs had paid subscriptions to Defendant's magazines and are therefore "consumers" and Defendant is a "video service provider" within the meaning of the VPPA. *See* FAC ¶¶ 22–23, 149-150, 153; Ex. B to Janove Decl., *Lee v. Springer Nature America, Inc.*, 24-cv-4493-LJL (S.D.N.Y. Mar. 4, 2025) Slip. Op. at 17–20 (citing *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024)). They allege that Condé Nast violates the VPPA by sharing their personal identifying information and video viewing history without consent, using tracking technologies. FAC ¶¶ 21, 70, 72, 152. Courts have consistently recognized that the c_user cookie constitutes PII because it identifies users via their Facebook ID. *See, e.g., Lee*, Slip Op. at 33 ("Courts have generally recognized that Facebook IDs constitute PII under the VPPA."); *Aldana v. GameStop, Inc.*, 2024 WL 708589, at \*8 (S.D.N.Y. Feb. 21, 2024); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182–83 (S.D.N.Y. 2015).[7]

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. Plaintiffs respectfully request oral argument on this Motion.

Respectfully submitted,

Dated: March 7, 2025

**JANOVE PLLC**

By: */s/ Raphael Janove*
Raphael Janove
500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

---

[7] Although Defendant's arguments about Plaintiffs' SB 707 claims are flawed in several respects, rather than engage in a tangential and complicated dispute about the application of SB 707, Plaintiffs will proceed on their other claims.

Liana Vitale
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), I hereby certify that this brief contains 8,408 words, including footnotes but excluding text specified in Rule 7.1(c).

Dated: March 7, 2025

*/s/ Raphael Janove*

Raphael Janove