UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOSIN BALOGUN and ALEXANDRA MASON, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>ADVANCE MAGAZINE PUBLISHERS INC. d/b/a CONDÉ NAST,<br><br>      Defendant. | Case No. 1:24-cv-07326-VSB<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT CONDÉ NAST'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR DISMISS FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...................................................................................................................................2

I.      PLAINTIFFS MUST ARBITRATE THEIR CLAIMS AT NAM .......................................2

          A.      Condé Nast's Unilateral Amendment Provision Is Valid ........................................2

          B.      Condé Nast Properly Updated the April 2024 UA ...................................................5

          C.      Plaintiffs Continued Using the Service Under the New UA....................................5

          D.      The April 2024 and July 2024 UAS Are Not Illusory or Unconscionable ..............6

II.     THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ...............9

          A.      Plaintiffs Do Not Allege Deceptive Acts by Condé Nast Under
                   GBL § 349.................................................................................................................9

          B.      Condé Nast Did Not Cause the Damages Plaintiffs Claim,
                   Time Lost at AAA ..................................................................................................10

          C.      Plaintiffs' VPPA Claim is Improper .......................................................................10

CONCLUSION................................................................................................................................11

CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT .........................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aceros Prefabricados, S.A. v. TradeArbed, Inc.*,
   282 F.3d 92 (2d Cir. 2002)..................................................................................................5

*Alfonso v. Maggies Paratransit Corp.*,
   203 F. Supp. 3d 244 (E.D.N.Y. 2016) ............................................................................ 8-9

*Anwar v. Fairfield Greenwich Ltd.*,
   742 F. Supp. 2d 367 (S.D.N.Y. 2010)..............................................................................3, 4

*Beltran v. AuPairCare, Inc.*,
   907 F.3d 1240 (10th Cir. 2018) ..........................................................................................7

*Csukardi v. Platinum Corral, LLC*,
   2017 WL 639376 (W.D. Va. Feb. 16, 2017) ......................................................................5

*Flores v. National Football League*,
   2023 WL 4744191 (S.D.N.Y. July 25, 2023) .....................................................................7

*Floss v. Ryan's Fam. Steak Houses, Inc.*,
   211 F.3d 306 (6th Cir. 2000) ..............................................................................................6

*In re Gen. Motors LLC Ignition Switch Litigation*,
   339 F. Supp. 3d 262 (S.D.N.Y. 2018)................................................................................9

*Lai Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*,
   180 F. Supp. 3d 236 (S.D.N.Y. 2016)................................................................................8

*Lebowitz v. Dow Jones & Co.*,
   508 F. App'x 83 (2d Cir. 2013) ..........................................................................................6

*Lovinfosse v. Lowe's Home Centers, LLP*,
   2024 WL 3732436 (E.D. Va. Aug. 8, 2024).......................................................................6

*Meyer v. Uber Technologies, Inc.*,
   868 F.3d 66 (2d Cir. 2017)..................................................................................................3

*Micheli & Shel, LLC v. Grubhub Inc.*,
   588 F. Supp. 3d 483 (S.D.N.Y. 2022) ............................................................................ 3-4

*Picha v. Gemini Tr. Co.*,
   2024 WL 967182 (S.D.N.Y. Mar. 5, 2024)........................................................................6

*Sacchi v. Verizon Online LLC*,
   2015 WL 765940 (S.D.N.Y. Feb. 23, 2015).......................................................................8

*Stone v. Golden Wexler & Sarnese, P.C.*,
    341 F. Supp. 2d 189 (E.D.N.Y. 2004) ....................................................................................3, 4

*TradeComet.com LLC v. Google, Inc.*,
    693 F. Supp. 2d 370 (S.D.N.Y. 2010) ..........................................................................................4

*Trend & Style Asia HK Co. v. Pac. Worldwide Inc.*,
    2015 WL 4190746 (S.D.N.Y. July 10, 2015) ............................................................................10

*Tsuya v. Plex, Inc.*,
    5:24-cv-09078-EKL, ECF No. 25 (N.D.Cal. Feb. 24, 2025) .......................................................7

*Wilks v. N.Y. Football Giants, Inc.*,
    2024 WL 4110915 (2d Cir. Apr. 11, 2024). ................................................................................7

**Statutes**

NY GBL § 349 ..................................................................................................................................2, 9

# PRELIMINARY STATEMENT

Plaintiffs insist that Condé Nast retroactively modified the parties' arbitration agreement to require arbitration at NAM, rather than AAA. In reality, it is Plaintiffs who wish to retroactively enforce an outdated agreement amended months before they filed their demands so that they can arbitrate at their preferred arbitration provider. Plaintiffs do not dispute the following sequence of events. Plaintiffs agreed to Condé Nast's April 27, 2023 User Agreement ("2023 UA") containing an arbitration agreement and a provision authorizing Condé Nast to alter the agreement by posting updates to its public website. *See, e.g.*, First Am. Compl. ("FAC") ¶¶ 22-23; FAC Ex. A. Before any outreach from Plaintiffs, Condé Nast published an amended UA on April 16, 2024 ("April 2024 UA") making one change—switching arbitration providers and rules from AAA to NAM. *Compare* FAC Ex. A, *with* Hoffmeyer Decl. in Supp. of Condé Nast's Mot. to Compel Arbitration or Dismiss ("Hoffmeyer Decl.") Ex. 1; Hoffmeyer Decl. ¶¶ 4-5. Later that month, Plaintiffs' counsel reached out to Condé Nast for the first time via a letter delivered April 24, 2024.[1] *See* FAC ¶ 45. Plaintiffs then filed arbitration demands at AAA on June 17, 2024—two months after Condé Nast changed its provider to NAM. In the intervening months, they continued receiving and using Condé Nast's products. *See supra* at § I.C. Throughout, Plaintiffs refused to arbitrate at NAM.

To distract from the clear conclusion Plaintiffs must arbitrate at NAM, Plaintiffs' Opposition to Condé Nast's Motion to Compel or Dismiss ("Opposition") puts forward a series of red herring arguments, none of which have merit. For example, it asserts the UA is illusory because it gave Condé Nast "unlimited right to alter the arbitration process to prevent Plaintiffs

---

[1] Plaintiffs' counsel dated the letter April 17, 2024 but certified mail tracking shows it did not arrive to Condé Nast until April 24, 2024. Decl. of Tyrone Lewis in Supp. of Mot. to Compel or Dismiss ("Lewis Decl.") ¶ 2.

from ever arbitrating." Opp'n at 14. Not true. Condé Nast has consistently maintained an agreement to arbitrate, and the so-called "unlimited" alteration is one change; Plaintiffs can easily arbitrate their claims at NAM, but refuse. The Opposition also insists that NAM is "less favorable" and "materially worse" than AAA. Opp'n at 1, 2. Also not true. NAM is a nationally recognized arbitration provider, and the Opposition does not try to show NAM is inferior to AAA. Likewise, the Opposition accuses Condé Nast of violating a supposed requirement by AAA to register its arbitration clause. False. Condé Nast was registered at AAA when AAA was Condé Nast's arbitration provider, and not when Condé Nast switched to NAM. Lewis Decl. ¶ 2, Ex. A. The Opposition also insists that unilateral change provisions are per se invalid. But New York law is clear that unilateral rights to modify are allowed if the modification is of the kind contemplated by the modification clause—precisely the case here.

If the Court does not compel arbitration at NAM, it should dismiss the FAC for failure to state a claim. Condé Nast did not act deceptively under GBL § 349 by exiting the AAA registry when it changed providers; quite the opposite: it did not present AAA as its provider when that provider was NAM. Plaintiffs also fail to allege any breach of contract because they are responsible for any damages resulting from time they lost in pursuing arbitration at AAA. And Plaintiffs' VPPA class claim is improper when Plaintiffs insist they entered into an agreement to individually arbitrate such claim.

## ARGUMENT

### I. PLAINTIFFS MUST ARBITRATE THEIR CLAIMS AT NAM

#### A. Condé Nast's Unilateral Amendment Provision Is Valid

Conde Nast's April 2024 amendment to name NAM as its provider is binding and enforceable. Plaintiffs do not dispute they agreed to the 2023 UA or that it permits Condé Nast to modify the arbitration clause by posting modifications on its website. Instead, they take the

untenable position that despite their consent, unilateral changes made without the other party's assent at the time of modification are per se unenforceable. *See* Opp'n at 7. This is wrong. As discussed more fully in Condé Nast's opening brief, courts in this district routinely recognize that unilateral modifications are enforceable so long as they fall in the universe of changes contemplated by the unilateral change provision. *See* Mot. to Compel or Dismiss ("Mot.") at 9-10. One such court expressly rejected the argument that "unilateral amendments are per se unenforceable in all instances. They are not." *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 373-74 (S.D.N.Y. 2010) (allowing a unilateral amendment without mutual express assent). Courts instead "[f]ram[e] the issue as one of basic contract interpretation, . . . whether the change-in-terms provision authorized" the modification or addition at issue. *Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189, 194 (E.D.N.Y. 2004).

      The Opposition points to no New York case saying otherwise. Instead, it cites opinions addressing amendments that introduced mandatory arbitration where none existed. Those two things are not the same, and Plaintiffs' cases do not support their argument. Plaintiffs cite *Meyer v. Uber Technologies, Inc.*, to support the argument that any modification requires express assent, even if there is a unilateral change process. 868 F.3d 66, 73 (2d Cir. 2017). *Meyer* said no such thing. It did not touch on contract modification at all; the dispute concerned the basic question "of whether the parties have contractually bound themselves to arbitrate." *Id.* at 72-73. In stating there must be unambiguous assent, *Meyer* simply recited the standard for assessing contract formation in the first instance. *Id.* at 74. Plaintiffs concede that issue, admitting they agreed to arbitrate through the 2023 UA. Likewise, in *Micheli & Shel, LLC v. Grubhub Inc.*, the original terms of service published by defendant contained no arbitration clause **and** expressly prohibited it from unilaterally altering the agreement. 588 F. Supp. 3d 483, 492-93 (S.D.N.Y.

3

2022) (stating "This Agreement may be amended only by a written document executed by both Parties" (alteration omitted)). Where the contract says that there will be no modifications without mutual signatures, there can be no modifications without mutual signatures.[2] That is not the case here.

The Opposition's other cited authorities similarly do not refute Condé Nast's position. Because the original contract in *Stone v. Golden Wexler & Sarnese, P.C.* did not mandate arbitration, the court rejected the unilateral addition of a new arbitration clause. 341 F. Supp. 2d at 195. But even in doing so, the court recognized that a unilateral amendment would be enforceable if it pertained to topics covered in the original contract. *Id.* at 195-96 (distinguishing changes to "terms already contained or contemplated in the original agreement" from ones that "sought to 'add an entirely new *kind* of term to the original account agreements'"). Other cases like *Anwar v. Fairfield Greenwich Ltd.* discussed email and other methods of notice because that was what those contracts required. 742 F. Supp. 2d at 372 (noting the agreement expressly required that unilateral amendments be sent to the other party). And while the court in *TradeComet.com LLC v. Google, Inc.* noted clicking through a revised set of terms was sufficient evidence of acceptance, it did not hold that that was required. 693 F. Supp. 2d 370, 377 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011), *and aff'd in part*, 435 F. App'x 31 (2d Cir. 2011). Rather, there too the court recognized, "[T]he fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement." *Id.* at 376.

---

[2] Similarly, *Micheli* noted that one of the defendants, DoorDash, sent emails of contract changes, but there is no indication the agreement contained a unilateral change clause that permitted less notice. 588 F. Supp. 3d at 488.

4

B. **Condé Nast Properly Updated the April 2024 UA**

Condé Nast also followed the modification procedure the 2023 UA set out:

> This User Agreement may be modified from time to time, so check back often. So that you are aware changes have been made, we will adjust the "Last Updated" date at the beginning of this document. If we make a material change to this User Agreement, we will also post on the Service a prominent notice that a change was made. Continued access, visitation and/or use of the Service by you, or continued receipt of a Product, will constitute your acceptance of any changes or revisions to the User Agreement.

The UA stated Condé Nast may modify the agreement from time to time, and make users aware by updating that webpage and "Last Updated" date. FAC Ex. A, at 3. It also informed users that continued access, visitation, or use of Condé Nast's services, or receipt of its products, constitute acceptance of the changes. Condé Nast followed just this process in April 2024 when it changed arbitration providers. *Id.* This modification was not material, as discussed in Condé Nast's opening brief. *See* Mot. at 10-11; *see Csukardi v. Platinum Corral, LLC,* 2017 WL 639376, at *5 (W.D. Va. Feb. 16, 2017) (holding arbitration fees, expenses, and "the procedures to govern arbitration are not considered . . . material term[s] in arbitration agreements"). Plaintiffs offer no meaningful argument the change was material, even though it was their burden to carry. *Cf. Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 100 (2d Cir. 2002) ("[T]he burden of proving the materiality of the alteration must fall on the party that opposes inclusion.").

C. **Plaintiffs Continued Using the Service Under the New UA**

Although not necessary to make the change to NAM enforceable against them, Plaintiffs further manifested acceptance of the April 2024 UA by continuing to access and receive Condé Nast's services. Plaintiff Mason continued subscribing to *Vogue* and *Bon Appétit* through June 2024. Suppl. Hoffmeyer Decl. ¶ 4. Plaintiff Balogun admits she had a subscription to Vogue Club until May 2024. Balogun Decl. ¶ 2. She also accessed Vogue Club's newsletter and

5

Vogue's website in June 2024. Suppl. Hoffmeyer Decl. ¶ 3. Moreover, Plaintiff Balogun expressly consented to the July 2024 UA by logging into her Vogue account in September 2024. *See, e.g.*, *Picha v. Gemini Tr. Co.*, 2024 WL 967182, at *9 (S.D.N.Y. Mar. 5, 2024); *see also* Mot. at 7. Though she argues in doing so she "did not agree" to the updated UA, she offers no response to the screenshot showing that in order to login, Plaintiff Balogun necessarily agreed to the July 2024 UA. *Compare* Balogun Decl. ¶ 4, *with* Hoffmeyer Decl. ¶¶ 9-13. Her post-hoc justification that her login was to obtain her invoice does not refute a clear manifestation of assent (especially where she does not explain why she could not have obtained that information more directly, like via a bank statement).

        **D.**        **The April 2024 and July 2024 UAs Are Not Illusory or Unconscionable**

The Opposition also misses the mark in its attempt to undo the April 2024 UA. For example, it wrongly claims that the change-in-terms provision makes the April 2024 UA illusory. *See* Opp'n at 13. To support that argument, the Opposition again relies on out-of-circuit, inapposite cases in which a business reserved limitless rights to add, delete, and revoke an arbitration agreement altogether. *Floss v. Ryan's Fam. Steak Houses, Inc.* applied Kentucky and Tennessee law to a contract that gave the arbitration provider "complete discretion over arbitration rules and procedures," and "the unlimited right to modify the rules." 211 F.3d 306, 310, 315 (6th Cir. 2000). That is nothing like Condé Nast's UAs. *See* FAC Ex. A, at 21-24. *Lovinfosse v. Lowe's Home Centers, LLP* applied Virginia and North Carolina law to an agreement that gave "unfettered discretion" to the business to revoke the arbitration agreement altogether. 2024 WL 3732436, at *7 (E.D. Va. Aug. 8, 2024). No revocation happened here. *See Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84-85 (2d Cir. 2013) (New York courts examine the reasonableness of a defendant's actual behavior before determining a contract is illusory). *Flores v. National Football League* concerned an arbitration agreement buried in a separate

6

manual that the employee never signed—and no longer had access to once the manual was amended. *See* 2023 WL 4744191, at *4 (S.D.N.Y. July 25, 2023), *motion to certify appeal denied*, 2024 WL 50238 (S.D.N.Y. Jan. 4, 2024), *and appeal dismissed sub nom. Wilks v. N.Y. Football Giants, Inc.*, 2024 WL 4110915 (2d Cir. Apr. 11, 2024). Not so here, where Plaintiffs had access to the UAs at all times. *See* Hoffmeyer Decl. ¶¶ 7, 11-12. Finally, in *Beltran v. AuPairCare, Inc.*, the Tenth Circuit took issue with the contract's failure to name any provider; but noted "if the contract names the particular arbitration service to be employed," (like here) there were adequate "assurances of neutrality." 907 F.3d 1240, 1258 (10th Cir. 2018).

Because the change from AAA to NAM was constrained and discrete, Plaintiffs resort to a series of red herrings and outlandish claims. They say Condé Nast claims an "unlimited right to alter the arbitration process to prevent Plaintiffs from ever arbitrating." Opp'n at 14. Condé Nast said no such thing. It is Plaintiffs who refuse to arbitrate at NAM and filed in federal court because they can't arbitrate under an outdated agreement. Similarly, Plaintiffs breathlessly warn they "could file their arbitrations in NAM tomorrow and Defendant could merely update its arbitration clause to select a different provider or add new preconditions before Plaintiffs could even arbitrate." *Id.* Again, false: when Plaintiffs filed their demands the operative UA required arbitration at NAM.[3] Condé Nast is not seeking to enforce any post-filing change.

The Opposition next argues certain provisions in the April 2024 and July 2024 UAs are unconscionable. Those arguments are not well founded. The Opposition claims California bars the application of modified terms to claims already accrued. *See* Opp'n at 15. But even if true, the law that applies here does not: "The Second Circuit has indicated that, in the absence of a

---

[3] *Tsuya v. Plex, Inc.* is irrelevant to the central issue here, because the parties in *Tsuya* did not dispute that the plaintiffs properly lodged their complaints at the right arbitration provider. Opp'n at 2 n.1 (citing 5:24-cv-09078-EKL, ECF No. 25 (N.D. Cal. Feb. 24, 2025)).

7

provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate." *Lai Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016); *see also, e.g.*, *Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *9 (S.D.N.Y. Feb. 23, 2015).

The Opposition next argues the batching provision in the July 2024 UA is unconscionable because of the supposed delay that would result from the batching process. But that is a non-issue here, where Plaintiffs' counsel filed only 25 demands before AAA.[4] *See* FAC Ex. B. And regardless of merit, that argument does not affect the Motion here—Conde Nast is seeking to compel arbitration at NAM consistent with the April 2024 UA, which did not include the batching provisions Plaintiffs complain about. Once at NAM, Plaintiffs are free to argue that such batching provisions should not be enforced for any reason.

Even if the Court found the batching provision unconscionable (neither correct nor relevant to the Motion), however, it would mean the provision gets severed under the UA's savings clause; arbitration still must be at NAM. *See* FAC Ex. A, at 23 ("If for any reason an arbitrator or court of competent jurisdiction finds any provision of the Agreement, or portion thereof, to be invalid or unenforceable, . . . the remainder of the Agreement will continue to be valid and enforceable in full force and effect."). The same goes for the term stating any claims must be filed within a year. *See Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 252 n.11 (E.D.N.Y. 2016) ("[E]ven if [the Court] were to find Article 13.6 void as impermissibly

---

[4] That Condé Nast did not respond to Plaintiffs' counsel's April 2024 letter and had "[Business]" in the July 2024 UA are irrelevant. *See* Opp'n at 5. As to the former, the UA required arbitrating at NAM before Plaintiffs ever reached out to Condé Nast about their claims; Condé Nast was not obligated to direct counsel on how to better position what Conde Nast viewed as meritless claims. As to the latter, that Condé Nast did not swap out placeholding language when updating the terms for one of many affiliated websites does not change that the UA properly named NAM as Condé Nast's provider.

8

shortening the statute of limitations for a FLSA claim, the other mandatory arbitration provisions would remain enforceable.").

## II.     THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.     Plaintiffs Do Not Allege Deceptive Acts by Condé Nast Under GBL § 349

If Plaintiffs' claims are not compelled to arbitration, they should be dismissed. As to the GBL § 349 claim, the Opposition says that claim is premised on Condé Nast's supposed failure to register its clause at AAA and its non-response to the 25 demands filed at AAA. Opp'n at 22. For either act to be misleading, however, AAA necessarily must have been Condé Nast's provider at that time, because a party after all does not have an obligation to participate in arbitration proceedings it did not assent to. It is clear here Condé Nast did not act deceptively. The FAC is limited to allegations that in July and August, months after Condé Nast switched from AAA to NAM, Condé Nast declined to register its clause or participate in proceedings filed at the wrong forum. *See* FAC Exs. B, C. Before the switch, Condé Nast had been registered with AAA. Lewis Decl. ¶ 2, Ex. A.  If anything, it would have been misleading for Condé Nast not to remove itself from the AAA registry after AAA was no longer Conde Nast's provider. Plaintiff points to no case saying a party can purposefully bring an arbitration in the wrong forum and then press a GBL § 349 claim when the counterparty does not participate.

The GBL § 349 claim additionally fails because Plaintiffs were not injured or injured as a result of allegedly deceptive acts. The only injury the Opposition offers is the time Plaintiffs spent pursuing their claims at AAA. Opp'n at 22. But the case they rely on, *In re Gen. Motors LLC Ignition Switch Litigation*, 339 F. Supp. 3d 262, 275 (S.D.N.Y. 2018), concerned time the plaintiffs spent repairing vehicles due to a faulty car ignition switch—nothing like the time that any litigant must expend to prosecute their claims. Worse yet on the causation element, the

Opposition does not cite one case countering Condé Nast's argument that Plaintiffs were required, and failed, to allege they were injured as a result of acts of deception. Opp'n at 23.

### B.   Condé Nast Did Not Cause the Damages Plaintiffs Claim, Time Lost at AAA

Plaintiffs also do not state a breach of contract claim. Plaintiffs do not claim they are injured from having to arbitrate at NAM. Their sole alleged injury is time spent litigating at AAA. *See* Opp'n at 18-19 (asserting nominal damages for allegedly losing "the better part of a year" by filing at AAA). This is insufficient for several reasons. First, Plaintiffs waived their right to sue over a mere change in provider by undisputedly agreeing to the change-in-terms clause in the 2023 UA. *See* Mot. at 3. Second, even if loss of time is recoverable, any injury resulted from Plaintiffs' conduct—the UAs require Plaintiffs to raise their illusory and unconscionability arguments in court.

### C.   Plaintiffs' VPPA Claim is Improper

The VPPA claim should be dismissed for reasons set forth in Condé Nast's opening brief. *See* Mot. at 23-24. The Opposition's only response is to point to generic statements about pleading in the alternative from a case involving breach of contract and unjust enrichment claims where there was a dispute about whether a contract existed. *See* Opp'n at 24 (citing *Trend & Style Asia HK Co. v. Pac. Worldwide Inc.*, 2015 WL 4190746 (S.D.N.Y. July 10, 2015)). That is nothing like here, where Plaintiffs spend the entirety of the FAC alleging they entered into an agreement to arbitrate while simultaneously arguing that, if they can't arbitrate at AAA, they never agreed to arbitrate and should be able to bring a class action (even though even under their theory, Condé Nast only would have "breached" the agreement to arbitrate for the 25 claimants who filed demands at AAA). *See id.* And far from offering meaningful response to Condé Nast's arguments that the Court should dismiss Plaintiffs' class allegations because the UA included a

class action waiver, the Opposition concedes that such waivers are "generally enforceable." *Id.* at 20.

## CONCLUSION

The Court should compel arbitration of Plaintiffs' claims at NAM or, in the alternative, dismiss the claims for failure to state a claim.

Dated: March 31, 2025                      Respectfully submitted,

By: */s/ Jeffrey Landis*
    Jeffrey Landis
    ZWILLGEN PLLC
    1900 M Street NW, Suite 250
    Washington, DC 20036
    Telephone: (202) 296-3585
    Facsimile: (202) 706-5298
    jeff@zwillgen.com

    Sheri Pan
    ZWILLGEN LAW LLC
    369 Pine Street, Suite 506
    San Francisco, CA 94104
    Telephone: (415) 590-2335
    sheri@zwillgen.com

    *Counsel for Defendant*
    *Advance Magazine Publishers, Inc.*

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT

This document complies with the word-count limitation of Local Rule 7.1(c) because, excluding the parts of the document that are exempted, this document contains 3,498 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

   */s/ Jeffrey Landis*
   Jeffrey Landis