ZwillGen
1900 M Street NW, Suite 250, Washington, DC 20036
(202) 296 3585

Jeffrey G. Landis
(202) 706-5203
jeff@zwillgen.com

October 1, 2025

*Via ECF*
Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 518
New York, NY 10007

Re: *Balogun, et al. v. Advance Magazine Publishers Inc.*, Case No. 1:24-07326-VSB

Dear Judge Broderick:

We represent Defendant Advance Magazine Publishers Inc. ("Defendant") in the above-referenced case. In connection with Defendant's pending Motion to Compel Arbitration or Dismiss the First Amended Complaint (ECF 21), we write to notify the Court of the following recent decisions which support dismissal of the First Amended Complaint's ("FAC") Video Privacy Protection Act ("VPPA") claim:

- *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), *petition for cert. filed sub nom. Detrina Solomon v. Flipps Media, Inc.*, No. 25-228 (Aug. 27, 2025) (Ex. A)

- *Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025) (Ex. B)

- *Taino v. Bow Tie Cinemas, LLC*, No. 23-CV-5371 (VSB), 2025 WL 2652730 (S.D.N.Y. Sept. 16, 2025) (Broderick, J.) (Ex. C)

- *Nixon v. Pond5, Inc.*, No. 24-cv-05823, 2025 WL 2030303 (S.D.N.Y. July 21, 2025) (Ex. D)

- *Golden v. NBCUniversal Media, LLC*, No. 22 Civ. 9858, 2025 WL 2530689 (S.D.N.Y. Sept. 3, 2025), *appeal filed*, No, 25-2226 (2d Cir. Sept. 16, 2025) (Ex. E)

In *Solomon,* plaintiff based her VPPA claim on defendant's alleged disclosure to Facebook of the URL and title of each video she viewed on defendant's website along with a Facebook cookie containing her Facebook ID ("FID") via the Facebook Pixel. *Solomon*, 136 F.4th at 46.

The district court dismissed the case on the ground that plaintiff did not plausibly allege her public Facebook profile page contained personally identifiable information ("PII") or that she accessed prerecorded videos within the meaning of the VPPA, and plaintiff appealed. *Id.* at 47-48.

After adopting an "ordinary person standard" for what constitutes PII—the information disclosed must identify the specific individual and the video he or she viewed to an ordinary person, not to the recipient or someone capable of sophisticated data analysis—the Second Circuit applied that standard to the two categories of information allegedly shared with Facebook. *Id.* at 52. As to video titles, the court found it "implausible" that an ordinary person would look at the multiple lines of code of the Facebook Pixel transmission and understand a portion of it—which referenced the URL of the webpage plaintiff accessed—identified a video title. *Id.* at 54. As to the FID, the Second Circuit made two observations. First, it held it was "not plausible" under the facts alleged that an ordinary person would see the c_user phrase and "conclude that the phrase was a person's FID." *Id.* Second, it held that plaintiff's allegations that "entering 'facebook.com/[Solomon's FID]' into any web browser would result in Solomon's personal Facebook profile, and that '[t]his basic method of accessing a person's Facebook profile is generally and widely known among the public'" did not sufficiently allege "*how* an ordinary person would use an FID to identify Solomon." *Id.* at 54-55 (alteration and emphasis in original).

In *Hughes*, the Second Circuit unequivocally confirmed that "*Solomon* effectively shut the door for [Facebook Pixel]-based VPPA claims." 2025 WL 1720295, at *2. In doing so, the court rejected the notion that a plaintiff "can still plead a viable VPPA claim against the NFL in light of [the Second Circuit's] decision in *Solomon*" and dismissed the complaint with prejudice. *Id.* at *1.

In *Taino,* this Court dismissed with prejudice a VPPA claim based on the allegation that when plaintiff visited defendant's website to purchase a movie ticket, defendant transmitted a URL revealing the name of the movie he purchased a ticket for to Facebook, which also received his Facebook ID through a "c_user" cookie Facebook placed on his browser. 2025 WL 2652730, at *3, *8. The Court found that "*Solomon* [wa]s directly on point" and consequently "fatal to [p]laintiff's VPPA cause of action" because it was not plausible that "an ordinary person would see the nine-line code of the cookie transmitted—which includes the 'c_user' phrase—to cross reference it with the www.facebook.com in the URL section and conclude that the phrase was a person's [Facebook ID] FID." *Id.* at *8 (internal quotation marks and citation omitted). And that as such, "[p]laintiff fail[ed] to support the allegation that the long list of complicated code constitute[d] PII under the VPPA." *Id.*

Other courts in this District have held the same. In *Nixon*, Judge Rochon applied *Solomon* and *Hughes* to plaintiff's VPPA claim based on allegations "that Pond5 disclosed their personally identifiable information to Meta and other unauthorized third parties through the Meta Tracking Pixel in violation of the VPPA." *Nixon*, 2025 WL 2030303, at *4. Judge Rochon dismissed the claim based on the Second Circuit's decisions in *Solomon* and *Hughes*, and denied leave to amend. The same in *Golden*: there, Judge Engelmayer acknowledged that the "emergent line of authority" starting with *Solomon* and continuing through *Nixo*n was dispositive of the plaintiff's Facebook

Pixel-based VPPA claim. *Golden,* 2025 WL 2530689, at *7. Namely, he held that Ms. Golden's allegations "that the defendant disclosed users' video-viewing activity to Facebook via the [Facebook] Pixel, specifically by transmitting URLs, FIDs, and video-watching history without their knowledge or consent . . . [did] not materially differ from those in *Solomon*, *Hughes*, and *Nixon*," and therefore dismissed the case with prejudice. *Id*. & n.7 (internal citations omitted).

All of these decisions support dismissal of Plaintiff's VPPA claim (to the extent this matter is not compelled to arbitration). Like the plaintiffs in each of the foregoing cases, Plaintiff bases his VPPA claim on the alleged sharing of "PageView[s]" (i.e the URLs of the pages viewed) and Facebook ID with Meta. *See* FAC ¶¶ 73, 75.[1] Such claims, however, are no longer viable in the Second Circuit after *Solomon* and *Hughes*.[2] Thus to the extent this matter is not compelled to arbitration, Plaintiff's VPPA claim must be dismissed.

Respectfully submitted,

*/s/ Jeffrey G. Landis*

Jeffrey G. Landis

[1] The FAC also includes vague references to alleged disclosures to TikTok, Google, LinkedIn and Pinterest*, see* FAC ¶¶ 78-79, but pleads no facts showing what video and personally identifying information is allegedly shared with those entities as would be necessary to state a VPPA claim.

[2] Although Defendant did not originally assert this as a ground for dismissal of Plaintiff's VPPA claim, Defendant did not waive the argument because it submitted its Motion to Compel or Dismiss well before the Second Circuit issued *Solomon*. *See Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (concluding no waiver if the argument was originally unavailable and later became available because of a subsequent change in law); *Holzsager v. Valley Hosp*., 646 F.2d 792, 796 (2d Cir. 1981) ("[A] party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made" and "the mere failure to interpose such a defense prior to the announcement of a decision which might support it cannot prevent a litigant from later invoking such a ground.").